## SALT LAKE CITY v. BERNHAGEN

No. 3440.   Decided April 6, 1920.   (189 Pac. 583.)

1. MUNICIPAL CORPORATIONS—STATUTE PERMITTING PROSECUTION FOR VIOLATION OF ORDINANCE IN NAME OF MUNICIPALITY CONSTITUTIONAL. Const. art. 8, section 18, requiring the style of process to be "The State of Utah," is not violated by Comp. Laws 1917, section 585, providing that offenses against municipal ordinances shall be prosecuted in the name of municipality.

2.  CONSTITUTIONAL LAW—EMINENT DOMAIN—MUNICIPAL CORPORA-
    TIONS—GARBAGE ORDINANCE HELD NOT ILLEGAL AS DISCRIMINATORY
    NOR AS TAKING PROPERTY OF ONE AND GIVING IT TO ANOTHER. A
    city ordinance enacted under Comp. Laws 1917, sections 570x23,
    570x63, 570x64, 570x87, providing for removal and disposal of
    garbage for the preservation of public health, *held* not illegal
    because discriminatory and arbitrary or because, under the
    guise of protecting the public health, property of one citizen is
    taken and given to another.

3.  MANDAMUS—MUNICIPAL CORPORATIONS—FOR REFUSAL OF PERMIT
    TO REMOVE GARBAGE, HOUSEHOLD MUST RESORT TO MANDAMUS.
    Where parties applied for permit to remove garbage for their
    own use, their remedy for denial of permit is by mandamus,
    and not by proceeding in violation of ordinance to dispose of
    their own garbage, and where doing so they were subject to
    prosecution under the ordinance, although using the hauling
    equipment and otherwise proceeding as required by such ordi-
    nance.

Appeal from District Court, Third District, Salt Lake
County; *Hon. P. C. Evans,* Judge.

Henry Bernhagen was convicted of violation of an or-
dinance of Salt Lake City, and he appeals.

AFFIRMED

*Ben Johnson,* of Salt Lake City, for appellant.

*Wm. H. Follant,* City Atty., and *H. H. Smith* and *Shirley
P. Jones,* Asst. City Atty., all of Salt Lake City, for re-
spondent.

GIDEON, J.

Defendant was convicted of violating a city ordinance of
Salt Lake City, and from that conviction appeals.

Under the ordinance in question, it is made the duty of
every owner, lessee, or occupant of any building or place
of business to provide and keep at all times, at such places

as the health commissioner may direct, suitable and sufficient metallic receptacles for receiving and holding garbage, paper in which garbage is incased, swill, market waste, etc. The ordinance provides that such receptacles shall be rain-proof and flyproof, with covers, and that they be placed at such places as the board of health directs, to be collected by the city contractor. The ordinance also provides that it is unlawful to deposit swill or other market waste in the same receptacle with stove ashes, tin cans, bottles, or other refuse. Additional provisions are contained in the ordinance detailing at length the equipment to be used in collecting and carrying garbage through the streets of the city. It is further provided that the city shall have the right to enter into a contract with any one for the exclusive right to gather, collect and dispose of all garbage.

The section relied upon is contained in an amendment to the original ordinance and is known as section 72x4, and reads as follows:

"It shall be unlawful for any person other than a person holding a permit from the board of health for such purpose, to collect or convey through the streets garbage, paper in which garbage is incased, market waste, swill, or dead animals. It shall be unlawful for any person other than a person holding a permit from the board of health for such purpose, to interfere in any manner with any receptacle containing garbage, paper in which garbage is incased, swill, market waste, or the contents thereof, or any receptacle containing any other form of city refuse or the contents thereof, or to remove any such receptacle from the location where the same was placed by the owner thereof, or to remove any of the contents of such receptacle."

The sections immediately following the foregoing, while not involved directly in this appeal, are at least explanatory and helpful in considering the objects sought by the ordinance in question and are as follows:

"Sec. 80. It shall be unlawful for any person to haul or carry garbage, paper in which garbage is incased, swill, waste paper, market waste, night soil or dead animals upon the streets of Salt Lake City without first obtaining a permit from the board of health.

"Sec. 81. It shall be unlawful for any person engaged in the business of removing manure, night soil or other offensive material, to fail to secure a permit from the board of health for that purpose,

or to fail to have the word 'scavenger' and the number of his permit in large white letters on the black ground plainly printed or attached to both sides of his wagon bed. * * *"

The city of Salt Lake claims authority for the enactment and enforcement of the foregoing ordinance by reason of the general provisions of the statute enumerating the powers of city commissions and city councils.

Comp. Laws Utah 1917 provides that boards of city commissioners shall have powers, among others, as follows:.

Sec. 570x23. "To regulate and prevent the throwing or depositing of ashes, offal, dirt, garbage, or any offensive matter in and to prevent injury or obstruction to, any street, avenue, alley, park, or public ground."

Sec. 570x63. "To declare what shall be a nuisance, and to abate the same, and to impose fines upon parties who may create, continue, or suffer nuisances to exist."

Sec. 570x64. "To make regulations to secure the general health of the city, to prevent the introduction of contagious, infectious, or malignant diseases into the city, and to make quarantine laws and enforce the same within the corporate limits, and within twelve miles thereof. To create a board of health and prescribe the powers and duties of the same."

Sec. 570x87. "To pass all ordinances and rules, and make all regulations, not repugnant to law, necessary for carrying into effect or discharging all powers and duties conferred by this chapter, and such as are necessary and proper to provide for the safety, and preserve the health, and promote the prosperity, improve the morals, peace, and good order, comfort, and convenience of the city and the inhabitants thereof, and for the protection of property therein; and to enforce obedience to such ordinances with such fines or penalties as the city council may deem proper. * * *"

It appears that defendant was engaged by a corporation known as Sparey & Mehse Company, doing business in Salt Lake City. The corporation owned and operated two restaurants in Salt Lake City, and the defendant was an employé of that company at a stated salary per month. His duties were to remove from the premises of the restaurants all the refuse or leavings from meals served, consisting of bread, trimmings, meats, vegetables, etc. It also appears that all of this refuse was deposited in cans, as required by the regulations of the board of health, and left standing in the rear of the buildings in which the restaurants

were operated, and the refuse was removed in a wagon, by the defendant, and taken to places outside the city limits. Such part of the refuse as was fit was fed to animals, namely, hogs and chickens. The treasurer of the corporation testified that the refuse so collected was worth from $100 to $120 per month; that the company paid to the defendant $90 per month for removing the garbage and keeping the yards of the restaurants in a santary condition. There is no contention that the appliances used by defendant in collecting and removing the garbage did not in every way meet the requirements of the ordinance.

Under authority of the above-mentioned ordinance, Salt Lake City had entered into an exclusive contract with another corporation, known in the record as the Mountain States Feeding Company, by which that company was given the exclusive privilege, and it was made its duty, to collect garbage, refuse, and other substances from the different restaurants, buildings, and places of business within certain districts of Salt Lake City, and to remove the same beyond the limits of the city.

The defendant was charged with violating the ordinance by collecting and conveying garbage through the streets of Salt Lake City, not then and there holding a permit from the Board of Health, contrary to the provisions of said section 72x4. The prosecution was conducted in the name of Salt Lake City, a municipal corporation, as plaintiff.

One of the grounds urged for a reversal of the judgment is that under the provisions of section 18, art. 8, of the Constitution, all prosecutions must be conducted in the name of the state. It being admitted that an arrest and trial under a city ordinance is a prosecution, therefore, it is contended a city could not maintain the action in its own name, but that it must be maintained, if at all, in the name of the state of Utah.

Said section 18, art. 8, is as follows:

"The style of all process shall be, 'The State of Utah,' and all prosecutions shall be conducted in the name and by the authority of the same."

Prior to the adoption of the Constitution of this state, it was provided by the laws of the territory of Utah that all prosecutions should be conducted in the name of the people of the territory of Utah. There also existed a territorial statute in effect the same as that existing now, that offenses against municipal ordinances should be prosecuted in the name of the municipality where the offense was committed. By Comp. Laws Utah 1917, Section 585, it is provided that all offenses against municipal ordinances shall be prosecuted in the name of the municipality enacting the ordinance. So far as we are advised, this particular question has never before been determined by this court. It has been the universal practice in the state since the adoption of the Constitution to conduct proceedings for violation of city ordinances in the name of the municipality. Under the general law of the state, municipalities are given authority to pass all ordinances required for carrying into effect all of the powers and duties conferred upon such municipalities. It is hardly consistent with the status of the law at the time of the adoption of the Constitution, and the powers granted to municipalities to enact ordinances to preserve the health, order, etc., of their citizens, that it was in the contemplation of the framers of the Constitution that all such prosecutions should be brought in the name of the state.

In *Davenport* v. *Bird*, 34 Iowa, 524, the court said:

"It is fitting and appropriate that prosecutions for violations of the criminal laws of the state should be carried on in the name of the government. But there is no fitness or propriety in requiring the state to be a party to every petty prosecution under the police regulations of a municipal corporation. Such a construction of this article of the Constitution seems to us to be unwarranted, and not intended by the framers of the Constitution."

Among others, the city has cited the following authorities holding contrary to the contention of appellant: *Spokane* v. *Robison*, 6 Wash. 547, 33 Pac. 960; *Seattle* v. *Chin Let*, 19 Wash. 38, 52 Pac. 324; *Helena* v. *Kent*, 32 Mont. 279, 80 Pac. 258, 4 Ann. Cas. 235; McQuillin, Mun. Corp. Sec. 1035.

This contention of appellant must therefore be denied.

Appeal from Third District

The further and principal contention of defendant is that the ordinance is discriminatory; that its enforcement against this defendant is both discriminatory and arbitrary; that it is an effort, under the guise of protecting the public health, to take property of value from one citizen and give it to another who uses it for exactly the same purpose contemplated by the owner, and that it is therefore within the inhibition of the Constitution.

The authority is given to municipalities of this state to enact all ordinances "as are necessary and proper to provide for the safety, and preserve the health  *  *  *  of the city and the inhabitants thereof." That the ordinance in question has for its object or intent the health of the inhabitants of the city cannot seriously be doubted, and that such was the purpose of the ordinance is not disputed by appellant. It is also conceded by appellant that it is "now well settled that the state or municipality may take the property of a citizen and destroy it in the promotion of public health, morals, or safety." *Mugler* v. *Kansas*, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205. It is, however, insisted by the appellant in this case that the enforcement of the ordinance by the municipality is not destroying property in the interest of health, but the effect is to take property of value from one and give it to another; that if the garbage, refuse, etc., is dangerous to health, and therefore a nuisance in the hands of the owner, it will continue to be deleterious to health and therefore a nuisance when delivered to and taken into the custody of the municipality or its exclusive contractor; that the city can only justify depriving the defendant of property, or the property of his employer, after showing its deleterious nature, and by showing further that it is taken with the intent and purpose of destroying it, or in some way removing the part found injurious to public health.

The defendant was convicted of violating an ordinance prohibiting gathering and hauling garbage through the streets of Salt Lake City without holding a permit from the board of health. It is evident, and the enacting of the ordinance

must be conclusive of that fact, that, in the judgment of the city authorities, collecting garbage as well as hauling it through the streets was or might be attended with noisome and offensive odors; that in the very nature of the material known as garbage, refuse, etc., it will, if not promptly collected and removed from the premises, ferment and give off odors and gases deleterious to health and become offensive to people residing in the immediate neighborhood. Not only the final destruction or disposition of garbage, refuse, etc., might have been, in the judgment of the city authorities, injurious to health, but the method or manner of its collection and transportation through the streets could or might be injurious to health. A summary of the general rules of law deducible from the authorities on the question herein involved, and similar questions, is comprehensively stated by Dillon on Municipal Corporations. In section 678 (5th Ed.) the author says:

"The removal and disposal of garbage, offal, and other refuse matter is recognized as a proper subject for the exercise of the power of a municipality to pass ordinances to promote the public health, comfort, and safety. The natural scope of an ordinance on this subject is confined to discarded and rejected matter, i. e., to such as is no longer of value to the owner for ordinary purposes of domestic consumption. If the matter in question has not been rejected or abandoned as worthless and is not offensive in any way to the public health, it does not come within the natural scope of such an ordinance. Garbage matter and refuse are regarded by the decisions as inherently of such a nature as to be either actual or potential nuisances. By reason of the inherent nature of the substance, it is therefore not a valid objection to an ordinance requiring disposal in a specified manner that garbage has some value for purposes of disposal, and that the effect of the ordinance is to deprive the owner or householder of such value. That the owner suffers some loss by destruction or removal without compensation is justified by the fact that the loss is occasioned through the exercise of the police power of the State, and the loss sustained by the individual is presumed to be compensated in the common benefit secured to the public.

"Founded upon the foregoing considerations, it is therefore within the power of the city not only to impose reasonable restrictions and regulations upon the manner of removing garbage, but also, if it sees fit, to assume the exclusive control of the subject, and to

provide that garbage and refuse matter shall only be removed by the officers of the city, or by a contractor hired by the city, or by some single individual to whom an exclusive license is granted for the purpose. An exclusive right so created is not open to the objection that it is a monopoly."

In *Gardner* v. *Michigan*, 199 U. S. 330, 26 Sup. Ct. 108, 50 L. Ed. 212, the Supreme Court approved the instruction of the trial court as a correct statement of the law. The instruction in question was as follows:

"The defendant in this case was transporting what confessedly was garbage. It is well settled that no one may claim damages because of enforced obedience to a police regulation designed to secure and protect public health. It is manifest that, were individuals permitted to escape the regulation fixed by the common council and dispose of garbage as they severally saw fit, all system in the collection and removal of refuse matter would be destroyed. Even if this garbage have some value for some such use as that to which the respondent's employer put it, the feeding of hogs, the courts will not, at the expense of the public health, recognize that this refuse matter, in its legal aspect, is property. No property right has, therefore, been violated."

Further on in the same opinion it is said:

"The court may well take judicial notice that table refuse when dumped into receptacles kept for that purpose will speedily ferment and emit noisome odors, calculated to affect the public health. If, in providing against such a nuisance, the owner of such material suffers some slight loss, the inconvenience or loss is presumed to be compensated in the common benefit secured by regulation."

If in the judgment of the city's legislative body the collection of garbage is or might be attended with deleterious effect to the public health, the courts ought not to interfere, and, so far as we have been able to ascertain from the authorities, have never interfered, with any reasonable regulation that will better enable the effective enforcement of any regulations respecting the supervision of and control over the collection of such deleterious material.

The defendant offered testimony to show that Sparey & Mense had applied to the board of health for a permit to remove this garbage. Such testimony was held to be immaterial and not admissible in this proceeding. And the ruling of the court excluding it is assigned as error. It

was also attempted to show that the board of health had acted arbitrarily in its refusal to grant said permit, and furthermore that the exclusive contractor did not perform the work of collecting and transporting the garbage as promptly or as satisfactorily or with as much regard to the regulations and ordinance of plaintiff city as the defendant did as an employé of said company. All such testimony was refused by the court, and in such ruling we think the court was clearly right. In *State* v. *Orr,* 68 Conn. 101, 35 Atl. 770, 34 L. R. A. 279, the court says:

"He [defendant] could not thus assume to take the law into his own hands, and pursue the business without a license, because a license had been wrongfully refused. His remedy, if he had any, would be to apply by mandamus to compel the board to grant him one."

The facts in that case were in many respects similar to the case under consideration. The opinion was prepared by Justice Baldwin, an eminent jurist and a recognized authority on constitutional law. The questions considered and determined were in many respects similar to the ones involved here and in each case were resolved against the contention of the appellant. The opinion of the Supreme Court of Michigan in the case of *City of Grand Rapids* v. *De Vries,* 123 Mich. 570, 82 N. W. 269, is to the same effect, as is also *People* v. *Gardner,* 143 Mich. 104, 106 N. W. 541. The position of respondent is also supported by *Wheeler* v. *City of Boston,* 233 Mass. 275, 123 N. E. 684. The last-named case involved the right of farmers to transport or haul through the streets of Boston garbage and other refuse from certain large hotels and restaurants in the city of Boston to their farms in adjoining towns, there to be fed to swine. It was admitted in that case that the equipment used in hauling such garbage in every way met the requirements of the ordinance of the city of Boston; but, notwithstanding that fact, the court held that the city was within its rights in enforcing an ordinance prohibiting any one from hauling through the streets garbage, refuse, etc., without having a permit so to do. See, also, *Whelan* v. *Daniels et al.,* 94 Neb. 642, 143 N. W. 929, 48 L. R. A. (N. S.) 979.

*City of Rochester* v. *Gutberlett*, 211 N. Y. 309, 105 N. E. 548, L. R. A. 1915D, 209, Ann. Cas. 1915C, 483, is considered a leading case upon the question here involved. 3 In one of the headnotes, which fairly reflects the opinion of the court, it is said:

"It is within the power of a municipality not only to impose reasonable restrictions and regulations upon the manner of removing garbage, but also, if it seems fit, to assume exclusive control of the subject, and to provide that garbage and refuse matter shall only be removed by the officers of the city or by a contractor hired by the city, or by some single individual to whom an exclusive license is granted for the purpose. An exclusive right so created is not open to the objection that it is a monopoly."

See, also, *Atlantic City* v. *Abbott*, 73 N. J. Law, 281, 62 Atl. 999.

We conclude from the foregoing authorities, and especially in view of the delegated powers to municipalities in this state to pass all ordinances and rules necessary and proper to provide for the safety of the health of the citizens, that the city is within its constitutional rights in enforcing the ordinance in question,' even if in so doing the defendant is deprived of property that may be of some value.

The judgment of the district court is affirmed, with costs of printing respondent's brief.

CORFMAN, C. J., and FRICK, WEBER, and THUR-MAN, JJ., concur.