RETAN et al. v. SALT LAKE CITY et al.

No. 4078.   Decided May 29, 1924.   (226 Pac. 1095.)

1. MUNICIPAL CORPORATIONS—COURT MAY INQUIRE INTO REASONABLENESS OF ORDINANCE. In determining validity of ordinances and municipal regulations conflicting with contracts theretofore made, courts are limited to the inquiry whether challenged provisions have reasonable relation to subject of police power and tend to accomplish purposes for which they were adopted.

2. MUNICIPAL CORPORATIONS—GARBAGE DISPOSAL ORDINANCE HELD REASONABLE. Municipality was not liable for breach of contract which obligated it to collect and deliver all garbage to plaintiff for disposal by passage of an ordinance authorizing private persons to collect and dispose of part of it; such ordinance being reasonable in view of Laws 1921, c. 11, amending Comp. Laws 1917, § 570x64, to permit private persons to dispose of their own garbage under reasonable regulations.[1]

GIDEON, J., and WOOLLEY, District Judge, dissenting.

---

[1] *Salt Lake City* v. *Bernhagan*, 56 Utah, 159, 189 Pac. 583.

Appeal from District Court, Third District, Salt Lake County; *Ephraim Hanson*, Judge.

Action by Arthur Retan and M. L. Hill against Salt Lake City and others. From a judgment of dismissal, plaintiffs appeal.

AFFIRMED.

*Day, Hoppaugh & Mark*, of Salt Lake City, for appellants.

*Wm. H. Folland*, City Atty., and *Shirley P. Jones*, Asst. City Atty., both of Salt Lake City, for respondents.

CHERRY, J.

This is an action by the plaintiffs against Salt Lake City, a municipal corporation, and its officers, for the purpose of enjoining the violation of a written contract entered into between the city and plaintiffs, concerning the collection and disposal of garbage, and for a decree requiring the city to specifically perform the contract. A demurrer to the complaint was sustained by the district court and the action was dismissed, from which judgment the plaintiffs have appealed.

The complaint sets out the contract sued upon in full, and contains express and formal allegations of the matters relied upon, much of which is not necessary to illustrate the questions to be decided. In substance it is alleged: That it was the duty of the city to establish sanitary regulations for the promotion of the public health. That garbage, kitchen refuse, etc., were deleterious to the public health. That on March 27, 1917, the defendant city entered into a written contract with the plaintiffs, the preamble of which recited:

"Whereas, the city, through its health department, has expressed a desire to arrive at a suitable and satisfactory plan for the disposal of all the garbage, refuse, dead animals and city waste matter collected under the supervision of said health department; and, whereas, the contractors propose to receive, accept and dispose of all garbage, refuse and city waste matter collected by the city (except ashes, dirt, rock or other natural filling matter, and

night soil) for a period of fifteen years from the date hereof, with-
out any cost or liability to the city whatsoever, except cost of col-
lection and delivery to the loading stations to be provided and
maintained by the contractors.  *  *  *"

That the city thereupon agreed to "establish and maintain
a uniform and regular collection of garbage  *  *  *  at
least equal to the present method of collection," and deliver
the same daily to the plaintiffs. The plaintiffs agreed, for a
period of fifteen years, to receive the garbage at the point
of delivery, and to haul the same out of the city to a suitable
plant to be by them maintained, and the garbage then re-
duced and disposed of, at the cost of the plaintiffs. The con-
tract provided specially that plaintiffs should have the ex-
clusive right to remove from the city "any animal found dead
within the city, and any meat, fish or poultry duly condemned,
*  *  *  and  *  *  *  the exclusive right to receive dead
dogs and cats from the city pond," and in consideration of
such rights plaintiffs agreed to remove such dead animals,
meat, fish and poultry without charge to the city. The con-
tract contains other terms, conditions and provisions, not
pertinent to the present inquiry.

It is alleged that at the time of the execution of the con-
tract the city was collecting all of the garbage and city waste
matter in the city; and, in an apparent effort to enlarge the
effect of the written contract as set forth, it is alleged that it
was the intent and purpose of the contract to require the city
to deliver all of the garbage, etc., of the city exclusively to the
plaintiffs. It is alleged that under the contract it was the
duty of the city to prescribe ordinances and regulations to the
end that all of the garbage, etc., produced in the city might
be delivered to plaintiffs for destruction and disposition,
but that the city failed and refused to pass the necessary or
any ordinances for such purpose, but to the contrary, on June
8, 1921, passed an ordinance by which the board of health was
authorized to issue permits to other persons to collect and
haul away garbage in certain parts of the city; that such per-
mits have been granted, and acting thereunder the said sev-
eral licensed persons have appropriated and do appropriate
large quantities of said garbage, notwithstanding the exclu-

sive contract and franchise of the plaintiffs. It is alleged that in compliance with and in reliance upon the contract the plaintiffs have expended in excess of $60,000 in the acquisition of lands and the construction of plants for the destruction and disposal of the said garbage; that the exclusive franchise and privileges conferred by the contract are extremely valuable to plaintiffs, and the granting of permits to others to collect and dispose of garbage in the city deprives the plaintiffs of the benefits of their contract and franchise. The threatened invasion of their rights and consequent injury to plaintiffs in the future, by the city, are appropriately alleged.

Plaintiffs pray judgment that the defendants be restrained and enjoined from further acting under such ordinance and be required to vacate and repeal the same, and to prescribe by proper ordinance for the taking by said city of all garbage of the city for destruction and disposition under plaintiffs' contract; that the board of health be enjoined and restrained from granting further permits and that those already issued be canceled and annulled; that the defendants be enjoined from in any manner repudiating plaintiffs' contract; and that a decree be entered requiring the city to specifically perform the same.

The parties are in dispute respecting the interpretation of the contract. The plaintiffs claim an exclusive franchise or right to have delivered to them all of the garbage produced in the city with the duty imposed upon the city to collect the same and deliver it to plaintiffs during the term of the contract. The city denies this claim, and contends that the contract provides for the delivery to plaintiffs of such garbage only as shall be collected by the city, with no obligation on the part of the city to collect all or any particular portion of the garbage produced in the city. In view of the conclusion reached, the question of the interpretation of the contract, in the respect mentioned, becomes immaterial, and we do not stop to consider or determine it.

The decisive question in the case is whether, upon the facts alleged, the acts of the city complained of as constituting a breach of the contract were wrongful and actionable, or

whether such acts were a lawful exercise of the police power of the city, which could not be bargained away by contract.

Plaintiffs' counsel ''concede that there can be no restriction imposed upon the power of a municipal corporation which precludes legislation required for the health of its people.''

We think the rule is correctly stated in 3 McQuillan, Municipal Corporations, § 1169, as follows:

"A common council cannot bargain away or divest itself of the right to make reasonable laws, and to exercise the police power whenever it becomes necessary to conserve or promote the health, safety or welfare of the community.

"So, power given to contract respecting a particular thing does not confer power, by implication, to contract even with reference to such thing so as to embarrass and interfere with its future control over the matter, as the public interests may require."

Plaintiffs' agreement constituted a contract in the sense that the respective parties were bound by its provisions so long as no valid and conflicting regulations were adopted by the city. While the agreement lasted, its provisions defined the rights and duties of the plaintiffs and the city. The contract, however, was subject at all times to the free and full exercise by the city of its police power in the public interest.

"The operation of reasonable laws for the protection of the public cannot be headed off by making contracts reaching into the future." *Dillingham* v. *McLaughlin*, 44 Sup. Ct. 362, 68 L. Ed. —, April 7, 1924.

These principles, as we understand it, are not seriously questioned by the plaintiffs. The contention is made that ''a solemn contract made by the city, having for its object the health and welfare of the people, is not to be lightly disregarded and its provisions set aside where no charge justly lies that the purposes of the contract are not accomplished. When the policy of the city has not been changed—when plaintiffs have not failed in any respect to comply with the contract—the municipality cannot disregard its solemn agreement because of mere caprice or because a pecuniary advantage may thereby be secured.''

There is no allegation in the complaint that the city has acted in the matter because of caprice or for pecuniary advantage, nor any fact alleged from which such inferences can

be drawn. It is merely alleged: That the city passed a certain ordinance relating to sanitary inspection whereby ﹍the city is divided into two districts—one consisting of the residential section and the other consisting of the business section:

"That in and by said ordinance; the said board of commissioners ordained and prescribed the method for collecting and disposing of garbage, refuse and other waste matter in the residence district only, and provided; and authorized the board of health to issue permits to other persons to collect, carry and haul away said garbage. That under said ordinance the defendants, the said board of health, have issued permits to divers and sundry persons to collect and haul away said garbage; and acting thereunder the said licensed persons have appropriated and do appropriate large quantities of said garbage."

The validity of the ordinances and regulations adopted by the city subsequent to the execution of the contract is not to be tested by the literal provisions of the contract, but by whether or not the ordinances and regulations were adopted in the proper exercise of the police power. And herein the courts are limited to the inquiry whether the challenged provisions have reasonable relation to the subject of police power and tend to accomplish the purposes for which they were adopted. No claim is made that the regulations under criticism are not designed to promote the health, safety or welfare of the city, or that the means employed have no real and substantial relation to the purpose intended. The only objection to the ordinances deducible from the allegations of the complaint, is that they are in violation of the literal terms of plaintiffs' contract.

No matter what the terms of the contract, it is subject to the right of the city to exercise its police power for the public benefit. And to the lawful exercise of such power, the provisions of the contract must yield, even though their purposes are defeated.

To state a cause of action, it was necessary for plaintiffs to set forth clearly, not only that the acts complained of were in violation of plaintiffs' contract, but that they were not in the lawful exercise of the powers reserved by the city. In this respect the complaint is fatally defective.

The ordinances complained of are not fully pleaded in the complaint. From the general allegation of their effect it is only apparent that they conflict with the literal terms of the contract. For all that is alleged the ordinances complained of could well have been enacted in the public interest and in the proper exercise of its power, reserved by law, in the contract.

When the contract was executed with plaintiffs, the powers of the city with respect to health and sanitary regulations were defined in general terms by Comp. Laws Utah 1917, §§ 570x23, 570x63, 570x64, 570x87. Under such powers the city might lawfully assume exclusive control of garbage and refuse matter and provide for its removal and disposition by a single individual to whom an exclusive license is granted for the purpose. *Salt Lake City* v. *Bernhagen,* 56 Utah, 159, 189 Pac. 583.

Subsequent to the execution of plaintiffs' contract the powers of municipal governments, in this respect, were modified and restricted by chapter 11, Laws of Utah 1921, amending section 570x64, Comp. Laws Utah 1917, to read as follows:

"To make regulations to secure the general health of the city, to prevent the introduction of contagious, infectious, or malignant diseases into the city, and to make quarantine laws and enforce the same within the corporate limits, and within twelve miles thereof. To create a board of health and prescribe the powers and duties of the same. Provided, however, that the board of commissioners or city council of any city shall not, by any ordinance, contract, rule or regulation, prevent or seek to prevent any person, firm or corporation from transporting through the streets, avenues, alleys or public thoroughfares of any city, garbage, kitchen refuse or the by-products of the business of such person, firm or corporation, or from selling or otherwise disposing of such garbage, kitchen refuse or by-products, except under such uniform and reasonable regulations as the board of commissioners or city council may by ordinance prescribe for the removal, hauling and disposal of the same by the owner thereof; and no city shall grant to any person, firm or corporation the exclusive right to collect or transport through the streets, avenues, alleys or public thoroughfares of such city any such garbage, kitchen refuse or by products; provided, further, that any city shall have the power to prescribe, by

ordinance, that any such garbage, kitchen refuse or by-product which may be deemed deleterious to the public health may be taken by such city and burned or otherwise destroyed by such city."

It is clear that the purpose of this amendment was to deprive city governments of the power to absolutely prevent private persons from disposing of their own garbage, and to secure such right to owners of garbage, under such uniform and reasonable regulations as the city might prescribe therefor.

Before the legislative amendment was enacted it was a matter of discretion with the city, in the exercise of its police power, whether it would take all garbage and waste matter from private ownership and control and regulate its disposition itself, or whether it would provide for the disposition of the same by the owners thereof, or by others, under regulations prescribed by the city. It might lawfully adopt one policy or the other. The power to do so was legislative and governmental, and could not be restricted by contract. The Legislature, by the amendment referred to, prescribed a limitation upon the power of the city, in the respect mentioned, and required it to depart from a policy which it formerly might or might not have done, in its discretion.

"The police power embraces regulations designed to promote the public convenience or the general welfare and prosperity, as well as those in the interest of the public health, morals, or safety." *C. & A. R. Co.* v. *Tranbarger*, 238 U. S. 67, 35 Sup. Ct. 678, 59 L. Ed. 1204.

The policy insisted upon by the plaintiffs is that the city continue to take into its exclusive possession all the garbage produced in the city, and deliver it to plaintiffs pursuant to the contract. This results in taking private property of pecuniary value from individuals. The legal right of the Legislature to do so in the exercise of the police power may be admitted, but it does not follow that, when the policy is once adopted, it must be continued. It is equally within the power of the Legislature to recede from or to adopt the policy and, when either is done, it is an exercise of police power.

To relax or depart from a policy which imposes upon private persons the burden of financial loss, and to adopt regula-

tions which mitigate or remove that hardship, is certainly for the the public welfare and prosperity; and if such can be done consistent with the protection of the public health (which is not questioned in this case) it is not only a legal, but a commendable exercise of the police power.

While, as before stated, the allegations of the complaint do not disclose the particular provisions and purposes of the ordinances complained of, there is no allegation in the complaint which is inconsistent with the presumption that the ordinances were reasonable and useful and in accordance with the law and policy declared by the Legislature in the amendment referred to.

The judgment is affirmed.

THURMAN and FRICK, JJ., concur.

GIDEON, J. (dissenting). I shall not attempt to state at any length the grounds that impel me to disagree with the reasons that are deemed sufficient by Mr. Justice CHERRY for an affirmance of the judgment of the district court. The opinion of the court is based upon the broad ground that—

"The contract, however, was subject at all times to the free and full exercise by the city of its police power in the public interest."

The contract existing between the appellants and the respondent city, which it is sought to have specifically performed, was made for the very purpose of conserving the "safety, health and welfare of the community." The making of that contract was a valid exercise of the police power of the city when made. The opinion of this court in *Salt Lake City* v. *Bernhagen*, 56 Utah, 159, 189 Pac. 583, is based upon the claim of the city that the contract was valid as being within the city's police power; that passing the ordinance authorizing such a contract was within the delegated powers of the municipality. We enter, therefore, upon a consideration of the question presented upon this appeal with the unquestioned fact that a valid contract exists between the appellants and the respondent city. It sufficiently appears from the allegations of the complaint that the only reason for at-

tempting to avoid carrying out the contract on the part of the city is the subsequent act of the Legislature delegating certain additional powers to the municipality. Chapter 11, Laws Utah 1921, quoted in the opinion. It seems to be conceded that the act of the Legislature delegating additional powers does not alone authorize or justify the municipality in violating a solemn contract theretofore made and legal when made. Any other claim or contention would impair the obligations of a contract and therefore be within the prohibition of the Constitution. The failure to perform the contract between the appellants and the respondent city must therefore be based upon other reasons than the act of the Legislature in granting additional powers to the muncipality.

It further appears from the complaint that the appellants had in good faith carried out their part of the agreement and had expended large sums of money relying upon the performance of the contract on the part of the city. The demurrer filed to the complaint admits the truth of the allegations of the complaint and every reasonable inference deducible from the facts therein stated. In my judgment it sufficiently appears that the methods or means to be employed in transporting garbage beyond the limits of the city under the amended ordinances were the same as provided in the contract between appellants and respondent city, also that no additional requirements safeguarding the health of the city are made in the ordinance complained of that were not provided in the ordinance in force at the time the contract was made. In other words, the amended ordinance of which complaint is made is to the effect that the board of health can issue permits to other persons to haul away the very garbage that the city undertook by its contract to collect and deliver to the plaintiffs, without requiring any other or additional safety so far as the health and safety of the public are concerned than was required by its former ordinance and the contract in question. It further sufficiently appears from the complaint that the attempt on the part of the city to justify its failure to keep its agreement and carry out its contract is not based upon the exercise of its police power

on behalf of the public interest, but is merely the arbitrary act of city officials to avoid carrying out a contract by granting to other parties rights which belong to and were the consideration for the making of the contract in question.

"The municipality cannot disregard its contract obligations upon mere caprice, or because a pecuniary advantage may be thereby secured. When that is attempted, the courts will come to the relief of the contractor, if the party committing the injury is, with reference to the matter complained of, subject to their jurisdiction." *Algers* v. *City & County of San Francisco* (C. C.) 32 Fed. 503.

As stated above, the contract was legal when made. No change of policy has been promulgated by the city. In fact, if the reasonable inferences deducible from the allegations of the complaint are accepted as true, as they must be, there have been no new or additional precautions required to preserve the public health, in the methods of removal of garbage. The authorities relied upon do not go to the extent of relieving the city from the obligations of its contract in the alleged exercise of police power under facts as they are made to appear by the complaint in this action.

As I understand the theory of counsel for the city, it is to the effect that conceding that the contract was valid when made and was made in the interest of public health, nevertheless, before the city can be charged with violating its contract and exceeding its authority it must be alleged and shown on the part of the appellants here that the change proposed by the amended ordinance was not made in the interest of public safety or public health. I am not ready to agree with that claim or contention; but, conceding such to be the law, it is, nevertheless, fairly inferable, in my judgmen, from the facts alleged, that the changes made and the proposed changes are not made in the interest of public health or public safety. No other reasonable conclusions can be deduced from the facts alleged in the complaint.

I express no opinion as to whether the remedy sought by appellants is the remedy to which they are entitled, but I am unable to agree with the opinion of the court, in view of the facts alleged in the complaint, that the city has the right to

violate with impunity and withdraw from a contract admittedly executed under its police power and admittedly valid at the time it was executed.

I therefore dissent.

WOOLLEY, District Judge, concurs with the views expressed in the dissenting opinion.

WEBER, C. J., did not participate herein.