# Town of Elba *v.* Rhodes.

## *Habeas Corpus Proceedings.*

1. *Constitutional law; repeal of dispensary act as to Coffee County and prohibiting the sale of liquors in said coutny.*—A notice that application will be made to the Legislature "for the repeal of the law authorizing the establishment of dispensaries, so far as the said law relates to the county of Coffee, and· forbids the commissioner's court of the county of Coffee from erecting dispensaries for said county," or a notice that application will be made to repeal "an act to authorize the municipal and other subdivisions of the State to buy and sell spirituous, vinous and malt liquors, and to further regulate and prohibit the sale of said liquor, approved Feb. 18th, 1899, in so far as the same applies to the county of Coffee," does not set forth the substance of the act approved Sept. 25th, 1903, entitled "An act to repeal an act entitled an act to author-

44c

[Town of Elba v. Rhodes.]

ize municipal and other subdivisions of the State to buy and sell spirituous, vinous and malt liquors, and to further regulate or prohibit the sale of such liquors, approved on the 18th day of Feb. 1899, in so far as said act relates to the county of Coffee, and to prohibit the sale or giving away of such liquors in the county of Coffee, after the first Monday in January, 1904." (Local Acts, 1903, p. 316); and said last named act being a local act, is unconstitutional and void, as being offensive to Section 106 of the Constitution.

2. *Same; act establishing dispensaries in the town of Elba unconstitutional.*—The act approved Oct. 1st, 1903, entitled "An act to establish and regulate a dispensary in the town of Elba, Coffee County, Alabama, for the sale of spirituous, vinous and malt liquors, and to establish and perpetuate board of commissioners for the management of said dispensary."    (Local Acts, 1903, p. 443), is unconstitutional and void, in that by its terms said act grants an exclusive right to the commissioners provided for therein as individuals, and their successors, to establish and maintain a dispensary, and thereby traffic in liquor, etc., in the town of Elba, and is therefore in violation of the organic law prohibiting monopolies.

APPEAL from the order of the Probate Judge of Coffee County.

Heard before the Hon. F. M. RUSHING.

The facts in this case are sufficiently stated in the opinion.

RILEY & WILKERSON, for appellant.

R. H. ARRINGTON and W. L. MARTIN, *contra.*

Appeal from decision and order of Judge of Probate of Coffee County on *Habeas Corpus* proceedings, discharging petitioner.

DOWDELL, J.—The appellee was tried and convicted by the mayor of the town of Elba on the affidavit and warrant for the violation of a town ordinance.   The proceedings before the mayor appear to have been regular, and while yet in the custody of the marshal under the judgment of conviction, and on the same day the judgment of conviction was rendered, and while the fine and

costs remained unpaid, the petitioner sued out a writ of *habcas corpus* before the probate judge of the county, and was on the hearing by the judgment of said probate judge discharged from such custody, and from this judgment the town of Elba appeals.—Code 1896 § 4314; *Burr v. Foster,* 132 Ala. 41.

The main question presented for consideration involves the constitutionality *vel non,* of the two Acts of the Legislature, one approved Sept. 25th 1903, Local Acts, 1903, p. 316; the other one approved October 1st, 1903, Local Acts 1903, p. 443.

The title of the Act of September 25th, 1903, is "An Act, to repeal an Act entitled an Act to authorize municipal and other subdivisions of the state, to buy and sell spirituous, vinous and malt liquors, and to further regulate or prohibit the sale of such liquors, approved on the 18th day of February, A. D., 1899, in so far as said Act relates to the county of Coffee and to prohibit the sale or giving away of said liquors in the county of Coffee after the first Monday in January, A. D., 1904." The Act itself under this title is composed of five sections. The first section provides for the repeal of the former statute as to Coffee county as set out in the title. The second section provides for prohibition in said county after the first of January, 1904. The third section provides a punishment for the violation of the provisions of the Act. The fourth section makes it the duty of the judge of the circuit court to give the Act specially in charge to the grand jury at each term of the court. The fifth sections contains the general repealing clause.

The Act, being a local one, it was necessary to its validity that notice and proof of notice should be made as required by § 106 of the Constitution. This section provides as follows: Sec. 106, "No special, private or local law shall be passed on any subject not enumerated in Section 104 of this Constitution, except in reference to fixing the time of holding courts, unless notice of the intention to apply therefor shall have been published, without cost to the State, in the county or counties where the matter or thing to be affected may be situated, which notice shall state the substance of the proposed law and be published at least once a week for four consecutive

[Town of Elba v. Rhodes.]

weeks in some newspaper published in such county or counties, or if there is no newspaper published therein, then by posting the said notice for four consecutive weeks at five different places in the county or counties prior to the introduction of the bill; and proof by affidavit that said notice has been given shall be exhibited to each House of the Legislature, and said proof spread upon the Journal. The courts shall pronounce void every special, private or local law which the Journals do not affirmatively show was passed in accordance with the provisions of this section."

The notice of this law which was exhibited with proof of the notice to the Senate and House, as shown on page 1918 printed Vol. of Senate Journal 1903, and on page 1301 House printed Journal, was in two forms, and as follows, omitting the affidavit, we copy the two notices as they appear on the Journal: "Notice." "To all whom this may concern, greeting:" "Notice is hereby given that application will be made at the present session of the Legislature of the State of Alabama for the repeal of the law authorizing the establishment of dispensaries so far as the said law relates to the county of Coffee in said State, and to forbid the commissioners court of the county of Coffee from erecting dispensaries for said county." Signed "A. Pelham, H. H. Blackmon."

### "Notice."

"Notice is hereby given that at the next session of the Legislature in September, 1903, application will be made to repeal "An Act to authorize municipal and other subdivisions of the State to buy and sell spirituous, vinous and malt liquors, and to further regulate and prohibit the sale of said liquors, approved February 18th, 1899, in so far as the same applies to the county of Coffee. Said "appeal" to take effect on the first Monday in January, 1904."

Under the principle laid down in the case of *Wallace v. Board of Revenue,* 37 So. Rep. 323, where section 106 of the constitution was construed, and where it was decided what was meant by the terms *substance of the pro-*

*posed law* as they occur in that section, it requires no argument to show, that in neither of the notices copied above, is the substance of the proposed law as it passed the Legislature, stated. Under the authority of the case above cited, the said Act of September 25th, 1903, must be declared void, as offensive to section 106 of the Constitution. We do not consider the other objections raised to this statute.

This brings us to the consideration of the question of the constitutionality of the Act of October 1st, 1903, and entitled "An Act, to establish, maintain and regulate a dispensary in the town of Elba, Coffee county, Alabama, for the sale of spirituous, vinous and malt liquors, and to establish and perpetuate a board of commissioners for the management of said dispensary." .

When we compare this Act with the Florence Dispensary Act, which was so ably and exhaustively treated in the case of *Mitchell v. State*, 134 Ala. 392, we find in reality and in principle nothing to distinguish the two Acts to the end of withdrawing the Act before us from an application of the doctrine laid down in *Mitchell v. State*. There is this difference in the two Acts: In the Act under consideration, the commissioners were not in express terms constituted a corporation. We think that it can make no difference that the commissioners were not declared to be a body corporate. Whether they be constituted a corporation, or are mere private persons having the powers, or some of the powers and incidents of a corporation, what difference can there be in principle when we come to apply the doctrine of the *Mitchell case, supra*. It seems it would have made no difference in that case, whether the commissioners were private persons, or were constituted a corporation.

. Another difference between the two Acts is, that the Florence Act, in terms, authorized the commissioners, at any time they might see proper to do so, to suspend or discontinue the dispensary, while no such express authorization is contained in the Act before us. The title of the Act here is "To establish, maintain and regulate a dispensary in the town of Elba, etc., and to establish and perpetuate a board of commissioners for the management of said dispensary." The Act itself appoints

the individuals constituting the board of commissioners and fixes their respective terms of office, and further provides for the election of their successors by the court of county commissioners. There is no other governmental means or aid provided whereby to perpetuate the existence of the dispensary for the purposes for which it is created. The dispensary is created with a board of commissioners to manage and control it, without a dollar to inaugurate its business being furnished, or authorized to be furnished, from any governmental source. The board of commissioners, it is true, are authorized to contract and be contracted with, sue and be sued, and to borrow money on the credit of the dispensary.

Without any capital to start the business, or a dollar's worth of property on which to base a credit, its start in the business for which it was created is dependant solely upon means to be furnished by individuals, and its success dependent upon individual efforts prompted largely if not solely, by incentives attributable to selfish ends, and not to duties imposed by law. There is nothing in the act to prevent a suspension or a discontinuance of the business by a failure on the part of those to whom its management and control is committed, and nothing in the law requiring its inauguration, and nothing requiring the exercise of any privilege conferred, as that of borrowing on the credit of the dispensary, if necessary, at any time to keep the concern going. It would seem from this, that although the Act does not in express terms authorize the commissioners to suspend or discontinue at pleasure, it leaves it where suspension or discontinuance may follow from non-action on the part of the commissioners.

Moreover, it may be asked, what is there to prevent a levy and sale under execution by a creditor of the liquors in stock at any time, a thing that could not be done, if such liquors were the property of the state, county or town?

The fact that the Act says that the commissioners' court of the county shall have "care and guidance" of the said dispensary, does not make it the dispensary of the county. The Act creates a dispensary, and appoints

[Town of Elba v. Rhodes.]

a board of managers, or commissioners, whose duties are
to superintend and supervise, and to have, in fact, the
"care and guidance" of its affairs, these commissioners
having the exclusive right to appoint the dispenser, also,
the right to remove him and appoint another, the duty
of said manager or dispenser being to keep on hand at
all times a stock of liquors, etc., under the direction of
said dispensary commissioners, and to sell for cash and
turn the money over to the secretary of board, who is
also selected by the said dispensary commissioners, and
who is not required to be a member of said board. And
yet in the Act is inserted the language above quoted, viz;
"that the dispensary shall be under the care and gui-
dance of the county commissioners," an empty prerog-
ative when we look to the Act to find the active, pos-
itive duties of the court of county commissioners. No
way is indicated in which this "care and guidance" is
to be exercised. The court has the authority by itself
only, to remove a dispensary commissioner, and that
must be for cause. They, the court of county commis-
siners, have no express authority in the conduct of the
dispensary itself. There is another right conferred by
the Act on the county commissioners, but it is at the same
time conferred in the disjunctive on the board of dis-
pensary commissioners, the language of the act is as fol-
lows; "The dispenser shall be of good moral character
and sober habits and shall have charge and control under
the supervision of said Board of Commissioners, or said
Court of County Commissioners." This language is at
variance with section 1 of the Act giving the court of
county commissioners "care and guidance" of the dis-
pensary. It serves to show the emptiness of the general
terms—"care and guidance," as used in section 1, and
further that it was but a futile attempt to meet the ob-
jections to the Florence Dispensary Act held invalid in
*Mitchell v. State, supra.*

The dispensary is neither the property of the state,
county or town of Elba. It is not managed or controlled
by either of these governmental agencies, nor, as for that
matter, by any governmental agency. The provision in
the Act that the court of county commissioners shall
have the "guidance and care" of the concern, when taken

in connection with the provisions of the Act which place the management and control absolutely in the hands of others, robs the former provision as to "care and guidance" of the court of county commissioners of any meaning; at least, takes away from the said court any positive power of control and direction. Neither the state, county, or town of Elba is to furnish the capital to run the concern. The applications of any profits that may arise from the venture is similar to the provisions in the Florence Dispensary Act as to the application of the profits.

What was said in *Mitchell's case, supra,* is apposite here; "it is obvious that an act proceeding on the general lines upon which this one proceeds might amount to an arbitrary designation by the legislature, or by the commissioner's court of a county  *   *   *   * of private persons or a private corporation to carry on the liquor traffic to the exclusion of all other private persons and private corporations in palpable violation of fundamental law. For illustration: Suppose it were a fact that the net profits of the liquor business in Florence and East Florence were ten thousand dollars, and this act had provided a salary of two thousand dollars for each of these five commissioners, would any court hesitate to declare that such a statute would be the conferring of a special privilege on these men or this close corporation composed of them, that it would be invidious and class legislation and unconstitutional and void? Would not such a statute be clearly for the benefit of these individuals, exclusive of the equal right of other individuals to engage in this business? We do not know what the profits of these dispensaries are. They may, for aught we know to the contrary, not exceed the three hundred and fifty dollars to be paid to these commissioners. And can it make any difference what these commissioners are to receive out of the business when they in fact are to receive all its issues and profits, when they, and not the State, nor the county nor the city, inaugurate it and supply the funds for prosecuting it, and themselves, to the exclusion of all others equally entitled to engage in the traffic under organic guarantees, carry it on and re-

ceive the proceeds of it?   Can the legislature, indeed, thus provide for the farming out of this traffic to persons named by itself or to be named by the county and town authorities upon conditions involving merely the payment of some part of the proceeds to the county and town, and forbid other persons to engage in the traffic at all?"

From a careful consideration and analysis of the Act in question, in all of its provisions, and summing up the whole situation, it can be regarded as nothing more nor less than the grant of an exclusive right to the commissioners as individuals, and their successors, to traffic in liquor, etc., in the town of Elba, and therefore, offensive to organic law prohibiting monopolies.

In the case of *State ex rel v. Rushing,* following other decisions, it was decided that the charter of the town of Elba, Local Acts, 1898-9, p. 1201, did not of its own force repeal or annul the prohibition Act of 1896, Acts, 1896-7, p. 79, but that it was only when the municipality adopted an ordinance under its charter licensing whiskey that this took place.   It is shown that the town of Elba had adopted a valid ordinance licensing liquors.   This was done under its charter power contained in the Act of incorporation.—Local Acts, 1898-9, page 1201.

The petitioner was tried and convicted for a violation of a valid ordinance of the town of Elba, and he was in lawful custody at the time of the suing out of his petition and of his discharge by the probate judge. Under our view of the case, it therefore follows that the judgment discharging the petitioner must be reversed, and a judgment will be here rendered remanding the petitioner to the custody of the marshal of the town of Elba.

Reversed and remanded.

McCLELLAN, C. J., HARALSON and DENSON, J.J., concurring.