UTAH MFRS.' ASS'N v. STEWART, State
Alcohol Warehouse Manager, et al.

No. 5228. Decided June 22, 1933. (23 P. [2d] 229)

*Hamilton Gardner,* of Salt Lake City, for plaintiff.

*George P. Parker,* Attorney General, and *Byron D. Anderson,* Deputy Attorney General, for defendants.

FOLLAND, Justice.

This is an original proceeding to obtain a writ of prohibition restraining and prohibiting the operation of the state alcohol warehouse by the warehouse manager, and the collection of fees and charges in connection therewith by the Attorney General. The case is presented on general demurrer to plaintiff's petition. The petition alleges plaintiff is a corporation whose general purpose is to develop, preserve, and protect the manufacturing business in which its members are engaged, and to foster and develop the manufacturing industry within the state; that it and the members of the association are residents and taxpayers of the state, and beneficially interested in this proceeding; that they are and have been engaged in manufacturing various articles, such as cosmetics, flavoring extracts, drugs, mincemeat, and other food products, and have invested large sums of money and employ numerous workmen in such enterprises, and pay substantial sums of taxes to the state and its political subdivisions; that the defendant Frank P. Stewart is alcohol warehouse manager pursuant to the provisions of Comp. Laws Utah 1917, §§ 3346 and 3347, as amended by Laws of Utah 1929, c. 90, and operates and conducts a warehouse in which alcohol is received, stored, distributed, and sold, and that such warehouse is the only warehouse of its kind permitted to be operated in the state under the provisions of such sections of the statute; that defendant Stewart now has, and his predecessors in office have had, an absolute

monopoly on the official receiving, storing, distributing, and selling of alcohol; that, when a manufacturer purchases alcohol from the warehouse manager, he first obtains a permit from the Attorney General which is presented to the manager; that the price paid for such alcohol is fixed by the manager by adding to the cost of the alcohol the amount of his rent, telephone, stenographer, and clerical expense, and in addition thereto also adding the cost of the Attorney General's permit fee and license fee and all other taxes and fees, and the adding of 10 per cent of such amount for his own compensation; that the manager receives no other salary or remuneration from the state, and that the state receives no revenues from the operation of the warehouse; that manufacturers of products requiring alcohol must purchase all alcohol used in manufacturing from the defendant Stewart, and cannot purchase such product from any other person or source whatever. It is alleged that such sections of the statute, under and by virtue of which the warehouse is conducted by the manager, are unconstitutional and void: (a) As creating a monopoly in favor of the manager in violation of article 1, § 23, and article 6, § 26, subsec. 16, of the Constitution of Utah; (b) as constituting a levy and collection of taxes not for a public purpose in violation of article 13, § 3 (see Laws 1921, p. 427) of the Utah Constitution, and the Fourteenth amendment to the Constitution of the United States; (c) as being a special or private law in violation of article 6, § 26, subsec. 8, of the Utah Constitution; (d) as the taking of plaintiff's property without due process of law in violation of the state and Federal Constitutions; and (e) as denying plaintiff the equal protection of the law in violation of the Fourteenth amendment to the Constitution of the United States.

The petition further alleges that the collection of certain fees by the Attorney General, pursuant to rules and regulations promulgated by the Governor and the Attorney General, is without authority of law, denies plaintiff the equal protection of the law, and takes its property without

due process of law; that the provision in such statute authorizing the Governor to increase the percentage above cost of the alcohol which the manager may charge above the 10 per cent fixed by statute is without authority of law as the performance of a legislative function by the executive in violation of article 5 and article 13, § 3 (as amended [see Laws 1921, p. 427]), of the state Constitution, and of the Fourteenth Amendment of the United States Constitution; that the collection of the fees and costs complained of by the manager and Attorney General have worked, and will continue to work, unless prohibited, irreparable injury on plaintiff and its members so that they are unable to compete with other manufacturers engaged in the same line of business in other states and will drive them out of business where alcohol is required in the process of manufacture.

Two general questions are presented by the pleadings: (1) The validity of sections 3346 and 3347, as amended, so far as they authorize the Governor of Utah to establish or designate a warehouse or warehouses and to appoint or designate a manager or managers thereof with exclusive authority, under regulation, to import, receive, sell, and distribute alcohol, rum, and brandy to permitted users; and (2) the validity of provisions in the rules and regulations of the Attorney General and Governor requiring payment of certain fees, and fixing the amount thereof, to be collected by the Attorney General in connection with the sale of alcohol, rum, and brandy.

In the year 1917 the state Legislature passed a comprehensive act prohibiting generally the manufacture, sale, and use of intoxicating liquors and regulating the manufacture, importation, and sale of alcohol for certain purposes. The act is now designated as Comp. Laws Utah 1917, title 54. The first section of title 54 is as follows:

Section 3341: "This entire title shall be deemed an exercise of the police powers of the state for the protection of the public health, peace, and morals, and all of its provisions shall be liberally construed for the attainment of that purpose."

Section 3343 is as follows: "Except as hereinafter provided, the manufacture, sale, keeping, or storing for sale in this state, or offering or exposing for sale, or importing, carrying, transporting, advertising, distributing, giving away, exchanging, dispensing, or serving of liquors, are forever prohibited in this state. It shall be unlawful for any person within this state knowingly to have in his or its possession any intoxicating liquors, except as in this title provided."

The pertinent portions of sections 3346 and 3347, as amended by Laws of Utah 1929, c. 90, are the following:

Section 3346: "The governor is hereby authorized and empowered to prescribe rules and regulations for the sale of alcohol for scientific and manufacturing purposes only, and for the sale to manufacturers of rum or brandy which he may determine is necessary as a preservative in manufacturing mincemeat, and for the sale of alcohol which shall have been denatured by some process approved by the United States commissioner of internal revenue. The governor shall establish or designate a warehouse or warehouses, and appoint or designate a manager or managers thereof, who shall, in accordance with rules and regulations prescribed by the governor, have exclusive authority, except as provided in Section 3347, to buy, import, receive, sell and distribute alcohol, rum or brandy permitted to be sold pursuant hereto; and such warehouse manager or managers shall bear all the expense incident to such business, and shall promptly fill all orders for alcohol, rum or brandy permitted to be sold pursuant hereto at a price not to exceed ten per cent above the cost of such alcohol or other fermented or distilled liquors laid down at such warehouse, unless a higher per cent be authorized by the governor. The warehouse managers shall have authority to buy and import and make shipments or deliveries of alcohol, rum or brandy permitted to be sold pursuant hereto only according to rules made by the attorney general, and shall make no imports, shipments, or deliveries which do not bear on the outer package or container, in a conspicuous place, a label or tag securely affixed, obtained from and designed and authorized by the attorney general, which shall bear the words: Liquor Shipment No.——— Date———. Authorized by the attorney general."

Section 3347: "Alcohol may be purchased at wholesale by druggists, hospitals, scientific and manufacturing institutions only from the warehouse managers, and rum or brandy permitted to be sold pursuant to Section 3346 may be so purchased by manufacturers only from such warehouse managers and all of such purchases shall be made only on written permit of the attorney general, for scientific and manufacturing purposes, by filing with the attorney general a statement in writing, under oath, stating that the applicant desires the alcohol,

rum or brandy permitted to be sold pursuant to Section 3346 for lawful purposes, and setting forth such purposes. * * *"

It is well settled that the courts will not declare an act of the Legislature unconstitutional unless it clearly and manifestly violates some provision of the state or Federal Constitution. Every presumption will be indulged in favor of constitutionality and every reasonable doubt resolved in favor of validity. *State* v. *Packer Corporation,* 77 Utah 500, 297 P. 1013. When legislative action is within the scope of the police power, fairly debatable questions as to reasonableness, wisdom, or propriety are not for the courts but for the Legislature. *Standard Oil Co.* v. *Marysville,* 279 U. S. 582, 49 S. Ct. 430, 73 L. Ed. 856. The first section of the state prohibition law, quoted above, declares the entire act to be an exercise of the police power of the state for the protection of the public health, peace, and morals, and enjoins a liberal construction of its provisions for the attainment of that purpose. The mere declaration by the Legislature that an act is within the exercise of the police power is not binding on the courts unless it is within the recognized scope of such power. That the prohibition or regulation of the manufacture, transportation, sale, and use of alcohol and other intoxicating liquors is an exercise of the police power of the state admits of no doubt. 33 C. J. 505; *Mugler* v. *Kansas,* 123 U. S. 623, 8 S. Ct. 273, 31 L. Ed. 205.

The Utah prohibitory law was enacted prior to the adoption of the Eighteenth Amendment to the Federal Constitution, and the enactment of prohibitory laws by the Congress of the United States pursuant thereto. There is not anything in the federal enactments which would affect the validity of the sections of the statute now challenged. The Eighteenth Amendment, the Federal Prohibition Act (27 USCA § 1 et seq.), and regulations promulgated thereunder grant no right to manufacture or sell alcohol within a state. They do not modify or enlarge more stringent state prohibi-

tion laws, but merely provide for the manufacture and sale of alcohol so far as federal law is concerned. *Colonial Drug & Sales Co.* v. *Western Products Co.* (C. C. A.) 54 F. (2d) 216. Provision is made by federal laws for the manufacture, sale, and distribution of alcohol for manufacturing and other recognized lawful purposes under strict regulation and where not in violation of state law. In this state, however, there is at present, because of the provisions of our statute, no agency authorized to sell alcohol for such purposes except the warehouse manager designated by the Governor. Sales are made by him to persons permitted thereto by federal and state regulations. From the status of alcohol as an intoxicant and as the base of various kinds of intoxicating liquors and beverages, it is apparent that its manufacture, sale, distribution, and use is subject to regulation and control within the inherent police power of the state, and the Legislature is competent to exercise this power to its full extent subject only to limitations or restrictions imposed by the state or United States Constitutions.

Plaintiff contends the Legislature exceeded its powers by enacting the sections referred to, in that they create a monopoly or grant a franchise or privilege in favor of the warehouse manager, in violation of article 1, § 23, which is as follows:

"No law shall be passed granting irrevocably any franchise, privilege or immunity."

And in violation of article 6, § 26, subsec. 16, which is as follows:

"The Legislature is prohibited from enacting any private or special laws in the following cases: * * *

"16. Granting to an individual, association or corporation any privilege, immunity or franchise."

It is said by Cooley:

"Under the rulings of the Federal Supreme Court, the grant of any exclusive privilege by a State, if lawfully made, is a contract, and not subject to be recalled." 1 Cooley, Const'l Limitations (8th Ed.) 580.

Franchises or privileges granted within the exercise of the police power cannot be irrepealable contracts, because the Legislature may not by any contract limit the exercise of the police power to the prejudice of the general welfare. *Butchers' Union Co.* v. *Crescent City Co.,* 111 U. S. 746, 4 S. Ct. 652, 28 L. Ed. 585; *Retan* v. *Salt Lake City,* 63 Utah 459, 226 P. 1095. What is prohibited by article 1, § 23, is not the granting of any privilege, franchise, or immunity within the exercise of the police power of the state, but the granting irrevocably of any franchise, privilege, or immunity. If it be assumed that the Legislature has granted a franchise or privilege to the warehouse manager, yet it is not an irrevocable grant. It is not one which may not be altered, revoked, or repealed. The designation is made by the Governor. He may appoint one or more managers, may designate one or more warehouses, and he may change the personnel or location at will. There is not anything of an irrevocable nature either in the establishment of the warehouse or designation of the manager. Nor is the act in contravention of article 6, § 26, subsec. 16, which inhibits the granting to an individual, association, or corporation of any franchise, privilege, or immunity by the enactment of private or special laws. The act is not private or special in its nature or object, but a general law having for its object the effective control of the traffic in intoxicating liquors for certain stated purposes and the prohibition of such traffic for all other purposes. The provisions for the creation of a warehouse where alcohol, rum, and brandy may be purchased by those entitled is an incident to the general purposes of the act, and as an aid in making the act more effective.

Plaintiff contends the law is unreasonable and discriminatory. If this were true, we do not see how plaintiff can lawfully complain, since there is no discrimination against it or other manufacturers who use alcohol, since all are subject to the same regulations. Plaintiff is not one who seeks to sell in competition with the manager,

but a user who is afforded an opportunity to purchase through or from the warehouse manager. The only manner in which plaintiff and others similarly situated claim to be injured is that they are required to pay a higher price for alcohol because of the charges authorized by statute to be collected by the manager, and the fees imposed by rules and regulations of the Attorney General and the Governor. In no other way does plaintiff allege it is injured in its property or rights.

It is alleged a monopoly is created because no one except the manager designated by the Governor may sell alcohol within the state, and plaintiff and others similarly situated must purchase from him and no one else the alcohol required for manufacturing purposes. Ordinarily monopolies are regarded as obnoxious, and a state Legislature may not, under the guise of police power, create a monopoly in any trade or occupation or article innocuous in itself and the prosecution of or dealing in which is within the common right of all citizens on equal terms. 19 R. C. L. 14. There is, however, no common right on the part of any person to sell intoxicating liquor, especially where the state has undertaken to control or prohibit the traffic as has been done in this state. *Trageser* v. *Gray*, 73 Md. 250, 20 A. 905, 9 L. R. A. 780, 25 Am. St. Rep. 587. The right to sell intoxicating liquor is not one of the privileges or immunities of citizens of the United States which the states are forbidden to abridge. *McClure* v. *Topf & Wright*, 112 Ark. 342, 166 S. W. 174. The rule is stated as follows in 19 R. C. L. 14 (Monopolies and Combinations) :

"However partial it may seem, the state can create a monopoly of any business that is inherently dangerous to society and for that reason may lawfully be prohibited by it on the grounds of public policy, without violating any constitutional inhibition, because no person possesses an inherent right to engage in any employment, the pursuit of which is necessarily detrimental to the public."

And in 6 R. C. L. p. 408 (Constitutional Law), as follows:

"For the purposes of government exclusive rights and privileges are occasionally granted to particular individuals. When the public purpose of such grants is apparent the courts as a rule sustain them as in no wise denying to any the equal protection of the laws or violating prohibitions as to the granting to any one of special and exclusive rights or immunities. This principle has been applied to sustain the validity of exclusive privileges to remove garbage from cities, to dispense intoxicating liquors, to supply school books, to operate ferries and to exercise the power of eminent domain."

In *Plumb* v. *Christie*, 103 Ga. 686, 30 S. E. 759, 762, 42 L. R. A. 181, the court sustained an act prohibiting the sale of intoxicating liquors except by and through a municipal dispensary, controlled by commissioners, where the dispensary had exclusive right of sale. The court said:

"It is equally well established that the sale of intoxicating liquors is peculiarly, on account of the evil effects resulting from their use, subject to legislative control and regulation. To such an extent can this power be exercised that an absolute prohibition of the sale of this commodity throughout a state can be accomplished by an act of its legislature; and, among the number of cases reviewing such legislation, our attention has never been called to a single case in a court of last resort where the validity and constitutionality of such an act has not been upheld. If this power is conceded to a legislature, we can see no possible escape from the conclusion that it necessarily carries with it the right to regulate the exclusive sale under a direct supervision of the government. As we have before seen, the contract or property right of no citizen is affected by such a measure. * * * Our attention has been called to no provision in the constitution, either expressly or by fair implication, denying to the legislature the right to clothe a municipality with such a privilege. Nor do we mean to say that the legislature has the right to create a monopoly of any one of the ordinary callings of life which one has a right to pursue, so long as its pursuit does not involve evil or danger to society; but when the state bestows a privilege which is not a common, natural right, such as the right to engage in the liquor traffic, it may create a monopoly, and yet no right of the individual be violated. It has often been held that monopolies may be created, even in such business as may fall within the ordinary callings of life, where an indiscriminate conduct thereof by individuals under certain circumstances and in certain places might be injurious to the common welfare."

If a municipal dispensary may be given exclusive privilege of sale of intoxicating liquors, we see no good reason why the Legislature may not provide for one or more warehouses in charge of a manager or managers designated by the Governor, where the conduct of the business is strictly regulated and the charges to be made are limited by statute, as in this case. A comparable situation was before the Supreme Court of the United States in the Slaughter-House Cases, 16 Wall. 36, 21 L. Ed. 394, where the Legislature of Louisiana designated one corporation at a certain location as the sole place and agency for the slaughtering of animals within certain counties. That act was assailed as a violation of fundamental law; that it created a monopoly and transgressed constitutional provisions against abridging the privileges and immunities of citizens of the United States, denying equal protection of the laws, and depriving plaintiffs of their property without due process of law. The court held that the grant of the exclusive privilege of providing slaughter facilities, guarded by proper limitations of prices to be charged, and imposing the duty of providing ample conveniences, was a police regulation for the health and comfort of the people. That such exercise of the police power of the state was not affected by or in conflict with the provisions of the Federal Constitution or the Thirteenth or Fourteenth Amendments thereto. So far as plaintiff alleges the Utah statute is in conflict with federal constitutional provisions, the Slaughter-House Cases furnish a complete answer.

The case of *Salt Lake City* v. *Bernhagen*, 56 Utah 159, 189 P. 583, furnishes an analogous situation where this court held that no fundamental law was violated by the adoption of certain ordinances by a municipal corporation providing for an exclusive contract for the removal of garbage within the city, and that the exclusive right so created was not open to the objection that it was a monopoly.

Plaintiff cites the following cases and authorities in support of the contention that the legislation in question is void

as granting a special privilege or franchise and creates a monopoly: *Mitchell* v. *State,* 133 Ala. 65, 32 So. 132; *Town of Elba* v. *Rhodes,* 142 Ala. 689, 38 So. 807; Ex parte Hall, 156 Ala. 642, 47 So. 199; *Guy* v. *Commissioners,* 122 N. C. 471, 29 S. E. 771; *State ex rel. Davies* v. *White,* 36 Nev. 334, 136 P. 110, 50 L. R. A. (N. S.) 195; 12 C. J. 1119; 17 R. C. L. 520; 1 Cooley, Const. Limitations (8th Ed.) vol. 1, p. 580, 813. In the cases of *Mitchell* v. *State,* supra, and *Town of Elba* v. *Rhodes,* supra, local dispensary laws were held void as against public policy, in that the commissioners and manager had a direct, personal and pecuniary interest in the business, and unconstitutional as an unlawful delegation of legislative power to the corporation. An important feature distinguishing those cases from the one at bar was that the law attempted to delegate the exercise of the police power of the state to and on the dispensary commissioners, and another, that the entire liquor business of the city and county was committed to the commissioners. Here the dispensing of alcohol is a mere incident to the enforcement of a general prohibition law. In *ex parte, Hall,* supra, a later dispensary law is upheld as not open to the vice in the law declared void in the former cases, in that it did not delegate legislative authority to the town. In *Guy* v. *Commissioners,* supra, a local dispensary act was sustained, the court holding that "state control of liquor within a county * * * is not a prohibited monopoly." *State* v. *White,* supra, is clearly not in point as a cursory reading will indicate. The citation of 12 C. J. 1119, is as follows:

"A monopoly in the sale of intoxicating liquors may be granted by the legislature in the exercise of its police power, but a statute is void which grants to individuals the profits to be derived from such a monopoly."

The statement in Corpus Juris that a monopoly in the sale of intoxicating liquors may be granted by the Legislature in the exercise of the police power is supported by the cases of *Ex parte Hall,* supra; *Deal* v. *Singletary,* 105 Ga. 466, 30

S. E. 765; and *Plumb* v. *Christie,* supra. The other statement is supported by the case of *Town of Elba* v. *Rhodes,* supra, which we have discussed. This citation is in harmony with what we have heretofore stated. The citations from 17 R. C. L. 520, and 2 Cooley, Const'l Limitations (8th Ed.) 813, state the rule applicable to the attempted creation of monopolies in businesses or pursuits where all persons ordinarily have a common right to engage therein, and are therefore not applicable where the Legislature in the exercise of the police power has undertaken to control or prohibit a business inimical to general welfare. The citation from 1 Cooley, Const'l Limitations (8th Ed.) 580, rather clearly states the distinction we have sought to make. It follows:

"Where the grant is of a franchise which would not otherwise exist, no question can be made of the right of the State to make it exclusive, unless the constitution of the State forbids it; because, in contemplation of law, no one is wronged when he is only excluded from that to which he never had any right. An exclusive right to build and maintain a toll bridge or to set up a ferry may therefore be granted; and the State may doubtless limit, by the requirement of a license, the number of persons who shall be allowed to engage in employments the entering upon which is not a matter of common right, and which, because of their liability to abuse, may require special and extraordinary police supervision. The business of selling intoxicating drinks and of setting up a lottery are illustrations of such employments. But the grant of a monopoly in one of the ordinary and necessary occupations of life must be as clearly illegal in this country as in England; and it would be impossible to defend and sustain it, except upon the broad ground that the legislature may control and regulate the ordinary employments, even to the extent of fixing the prices of labor and of commodities. As no one pretends that the legislature possesses such a power, and as its existence would be wholly inconsistent with regulated liberty, it must follow that lawful grants of special privileges must be confined to cases where they will take from citizens generally nothing which before pertained to them as of common right."

The author there states that the business of traffic in intoxicating liquor is an exception to the general rule, and is subject to the extraordinary police supervision of the state.

It is evident that the selling of alcohol in this state when confined to one or a limited number of persons by law takes from no citizen that which pertains to him as a common right. The statutory provisions in question were within the power of the Legislature to enact in the exercise of the police power. They do not offend against any state or federal constitutional inhibition.

The provisions of section 3346 as amended, requiring the warehouse manager to fill all orders at a price not to exceed 10 per cent above the cost of the alcohol or other liquors, is challenged as being a levy or collection of a tax which is not for a public purpose, and in violation of article 13, § 2, of the state Constitution (as amended see Laws 1921, p. 427), which makes provision for taxation, and the Fourteenth Amendment to the United States Constitution. Counsel for plaintiff does not show how this 10 per cent added to cost of the product to cover expenses and profits is a tax. He assumes that it is such a tax, and argues that it is not levied for a public purpose because it is retained by the manager. We may well agree with what is said in the brief that a tax imposed by the state must be for a public purpose, but we are unable to agree with the assumption that this is a tax or ever intended as such. It is no more a tax than a rate for service imposed by a public utility and approved or authorized by the state acting through the Public Utilities Commission. The manager is not required to add 10 per cent to the cost, but is prohibited from charging in excess of that percentage unless expressly authorized by the Governor to charge more. The manager is by the law required to fill all permitted orders at a price which shall not exceed that provided by statute.

The Attorney General answered this contention of plaintiff by urging that the manager is a state officer and the "collection made by him is merely the method adopted by the legislature to pay a state officer his salary," and therefore is collected for a public purpose. We are not impressed

with this reasoning. As we read the statute, the Legislature carefully refrained from directly characterizing the manager as a state official, and indeed there is not anything in the act from which it might fairly be inferred that it was the intention that he be such. He is required to give bond to the state, and under federal law he must also give bond to the national government. This does not make him an officer of either government. Had the Legislature intended to create the manager a state officer, undoubtedly provision would have been made to pay him a "fixed and definite salary," because all state officers, with certain named exceptions, must, under the provisions of article 21, § 1, be paid "fixed and definite salaries." The warehouse manager is not within the named exceptions of officers who may be compensated for their services by retaining fees collected by them. The state, by the statute, is not itself in the liquor business. It does not invest its money or earn any profits from the enterprise. The manager is not an official of the state, but merely a quasi public agency designated to perform a particular service under strict regulation and with limitations on the charges he may make, all in aid of a public purpose to more effectively control the permitted traffic in intoxicating liquors under the prohibition law. The charge of 10 per cent above cost is fixed by the law to cover cost of handling and to provide a profit to compensate the manager for his services and investment. Whether this is such an unreasonable percentage as to be beyond legislative discretion is not presented by any facts alleged in the petition.

Plaintiff alleges that the fees fixed by rule and collected by the Attorney General in connection with the operation of the warehouse and the issuance of permits are without authority or warrant of law, and are illegal and void. The statute is silent with respect to fees to be collected or charges to be made by the Attorney General for permits which he is authorized to issue or for any other

service to be rendered in connection with the administration of the prohibition law. Provision is made for the promulgation of rules and regulations as follows (Laws of Utah 1929, c. 90, § 3346) :

"The governor is hereby authorized and empowered to prescribe rules and regulations for the sale of alcohol for scientific and manufacturing purposes only, and for the sale to manufacturers of rum or brandy which he may determine is necessary as a preservative in manufacturing mincemeat, and for the sale of alcohol which shall have been denatured by some process approved by the United States commissioner of internal revenue."

It is further provided that the manager or managers shall, "in accordance with rules and regulations prescribed by the governor," have authority, etc., and still further in the same section that "the warehouse manager shall have authority to buy  *  *  *  and make shipments or deliveries of alcohol  *  *  *  permitted to be sold pursuant hereto only according to rules made by the attorney general. *  *  *"

Pursuant to this authority, rules and regulations have been promulgated by the Attorney General and approved by the Governor. These include provision for fees to be paid the Attorney General of $50 per annum by every manufacturer of alcohol, of $50 per annum by the warehouse manager, of certain fees on each gallon of denatured alcohol, for each permit to ship, and other fees. Neither the requirement for payment of these fees nor the amount thereof has been fixed by any law. · The Governor or Attorney General are not expressly authorized to impose fees or fix the amount thereof for any services in connection with the operation of the law, and have no such power, unless it is delegated to them by the above-quoted provisions authorizing the making of rules and regulations. The Attorney General in his brief does not attempt to defend the legality of the rules or regulations which require payment of fees. He merely says:

"We think there is ample authority in the Attorney General, under the above quotation, to charge sufficient to defray the costs of clerical and stenographic help. However, if it is held that these small fees should not be paid, still it would not interfere with the entire

system functioning as it has in the past omitting only the fees charged by the Attorney General."

The Constitution of Utah, article 21, § 2, provides:

"The Legislature shall provide by law, the fees which shall be collected by all officers within the state."

The statute does not mention fees nor delegate to the Governor and Attorney General or either of them the authority to require payment of fees or to fix the amount thereof. Whether such would be a lawful delegation of authority is not before us, since no such delegation is attempted. In view of the constitutional provision, it would follow that the requirement for payment of fees or the amount thereof, or both, should be found in express legislative enactment. The Legislature may not delegate power to executive officers. 12 C. J. 844. The power to make rules and regulations may properly be delegated to executive officers, but the rules and regulations promulgated in pursuance of such authority must be such as make effective the operation and enforcement of the law within its expressed general purpose. *State* v. *Goss,* 79 Utah 559, 11 P. (2d) 340. Such power does not carry with it the right to fix and collect fees in the absence of legislative intent that fees and charges be imposed or collected.

Complaint is made of that portion of section 3346, as amended, which provides the Governor may increase the percentage which the manager may charge over the cost of the liquors as in violation of the state and Federal Constitution. A sufficient answer is that the Governor of the state has not attempted to authorize such an increase. Until the percentage is increased, plaintiff has no ground for complaint, since the provision does not affect it in its rights or property or impose any charge which it is required to pay. The provision is clearly severable, and, even if it should be held void, such holding would not necessarily invalidate the other provisions of the statute.

The writ is made permanent only as to the fees charged and collected by the Attorney General. No costs will be awarded either party.

STRAUP, C. J., and ELIAS HANSEN, EPHRAIM HANSON, and MOFFAT, JJ., concur.