# RIGGINS et al. v. DISTRICT COURT OF SALT LAKE COUNTY et al. and four other cases.

Nos. 5725, 5726, 5728, 5730, 5732. Decided November 19, 1935.
(51 P. [2d] 645).

Rehearing denied October 14, 1936.

188

*Shirley P. Jones, H. A. Rich,* and *E. A. Rogers,* all of Salt Lake City, and *Knox Patterson,* of Price, for plaintiffs Riggins, Bolotos, and others.

*Arthur Woolley,* of Ogden, for plaintiffs Jones and others.

*Karl V. King,* of Salt Lake City, for plaintiff McGillis.

*J. H. Braffet,* of Price, for plaintiffs Evans and others.

*E. M. Bagley, H. D. Moyle,* and *Frank L. Copening, Jr.,* all of Salt Lake City, for defendants.

ELIAS HANSEN, Chief Justice.

Five petitions have heretofore been filed in this court whereby plaintiffs seek to prohibit the defendants from further proceeding against plaintiffs in cases pending in the defendants district courts. In each of the cases so pending in the district courts, the defendant liquor control commission is, in its own name, seeking writs of injunction permanently restraining plaintiffs herein from selling, keeping, and giving away alcoholic beverages on premises occupied by plaintiffs. Upon the filing of each of the petitions in this court, an alternative writ of prohibition, and a writ of certiorari in aid thereof, were issued as prayed for. Pursuant to such writs, the defendants appeared, filed certified records of the various proceedings had in the cases here brought in question, filed motions to quash the writs, motions to strike certain allegations of the petitions, and demurred generally to the petitions. All five proceedings were, at the time of the oral argument by consent of counsel, consolidated. They will all be disposed of in this opinion.

The allegations of the various petitioners are substantially the same. The relief prayed by the petitioners is identical. It is in substance alleged in each of the petitions: That plaintiffs are, and at the times complained of were, engaged in such businesses as conducting restaurants, soft drink parlors, cigar and tobacco stores; that they and each of them now have, and at the time complained of had, licenses to sell draught beer containing less than 3.2 per cent of alcohol by weight, which licenses were lawfully issued in full compliance with, and by authority of chapter 10, Laws of Utah 1933, Second Special Session; that such licenses, and each of them, were and are unrevoked and constitute valid and existing authority to sell beer as authorized in such act; that under and by virtue of claimed authority conferred upon the liquor control commission of Utah by the Liquor Control Act (Laws Utah 1935, chapter 43), such liquor control commission by and through its chairman and administrator,

Hugh B. Brown, caused complaints to be filed in the defendants district courts against each of the plaintiffs herein charging each of them with having unlawfully sold, kept, stored, and given away alcoholic beverages at their respective places of business; that upon filing such complaints hearings were had thereon without any notice whatsoever to the plaintiffs; that upon such pretended hearings writs of injunction were issued against plaintiffs, and each of them, and against their respective places of business enjoining each of plaintiffs from, at their respective places of business, selling, keeping, giving away, or using alcoholic beverages, and from moving or in any way interfering with the alcoholic beverages, packages, fixtures, or other things used in connection with the selling, keeping, storing, giving away, or using of alcoholic beverages on the premises where plaintiffs conducted their businesses until the conclusion of the trial; that notices of the injunctions were posted in plaintiffs' places of business, thus advertising to plaintiffs' customers and patrons that plaintiffs were such violators of law that it was necessary to issue injunctions against them with the result that plaintiffs' patronage has dwindled to almost nothing and their investments and businesses jeopardized to the extent that they are threatened with complete destruction unless relief can be secured from this court; that no bonds or other security has been posted by defendants, or any of them, to secure plaintiffs against such damage and injury as may be sustained by reason of the issuance of such injunctions; that the liquor control commission has, without notice or hearing, revoked the permit of one of petitioners to purchase liquor; that the liquor control commission claims the right to retain control of the money derived from the sale of liquor and pay themselves from such funds and use the remainder for carrying on the business of buying and selling liquors, employing agents, servants, and attorneys; that the defendants and each of them have threatened each of the plaintiffs, their employees, servants, agents, patrons, and customers with prosecutions

for contempt of court if they, or either of them, use or consume any alcoholic beverages upon plaintiffs' premises; that the Liquor Control Act violates article 1, § 8; article 4, §§ 2 and 4, and the Fifth, Sixth, Fourteenth, and Twenty-First Amendments of the Constitution of the United States; that the act likewise violates article 1, §§ 1, 7, 9, 10, 11, 12, 18, 22, 23, 24, 25, and 27; article 6, § 26, and subdivisions 6 and 16 thereof; article 7, §§ 17, 18, and 21; article 8, §§ 1, 10, 18, and 21; article 13, §§ 2 and 9; article 14, § 1; article 21, §§ 1 and 2, of the Constitution of Utah; that plaintiffs have no plain, speedy, or adequate remedy at law. There are numerous other allegations in the petitions which bear but remotely, if at all, upon the questions presented for determination. What has been said as to the nature of the allegations of the petitions is sufficient to indicate what is relied upon by the plaintiffs for the relief prayed.

The parties are agreed that the constitutionality of the act may properly be disposed of in this proceeding. The authorities so hold. 22 R. C. L. 13. Defendants, however, contend that our review of the act should be confined to the constitutionality of such portions thereof as are directly involved in the injunctions issued by the district courts. As will be noted, plaintiffs contend that the act violates various provisions of both our State and Federal Constitutions. It is urged that the act fails to comply with article 6, § 23, of our State Constitution which provides that:

"Except general appropriation bills, and bills for the codification and general revision of laws, no bill shall be passed containing more than one subject, which shall be clearly expressed in its title."

The title of the Liquor Control Act is as follows:

"An Act to Provide a System of State Control of the Manufacture, Purchase, Sale, Importation, Exportation, Transportation, and Use of Alcohol and Alcoholic Beverages; to Create a Liquor Control Commission, and to Provide for the Sale of Alcohol and Alcoholic Beverages by Such Commission, to Make an Appropriation Therefor; to Provide Penalties for the Violation of the Provisions of this Act;

and Repealing Title 46 of the Revised Statutes of Utah, 1933, Chapter 35 of the Laws of Utah, 1933 and Chapter 10 of the Laws of Utah 1933, Second Special Session."

Plaintiffs urge that sections 16 and 17 of the act are not clearly expressed in the title thereof, and therefore, the whole act is unconstitutional. Such sections authorize the liquor control commission, hereafter referred to as the commission, to borrow from the state land board and the State Industrial Commission, and also authorize the state land board and the State Industrial Commission to loan to the commission money "for necessary purposes in the administration of the act." It is contended on behalf of plaintiffs that the authority conferred in the body of the act upon the commission to borrow and upon the state land board and Industrial Commission to lend money does not fall within the purview of the provision in the title "to make an appropriation," or within any other provision expressed in the title. Cases are cited which lend support to such contention. However, a failure of a legislative enactment to comply with the constitutional provision requiring that the subject-matter of an act be clearly expressed in its title does not render the act unconstitutional as to subject-matters which are clearly expressed in the title of the act. The rule is thus stated in 1 Cooley's Constitutional Limitations (8th Ed.) p. 308:

"But if the act is broader than the title, it may happen that one part of it can stand because indicated by the title, while as to the object not indicated by the title it must fail. Some of the State constitutions, it will be perceived, have declared that this shall be the rule; but the declaration was unnecessary; as the general rule, that so much of the act as is not in conflict with the Constitution must be sustained, would have required the same declaration from the courts. If, by striking from the act all that relates to the object not indicated by the title, that which is left is complete in itself, sensible, capable of being executed, and wholly independent of that which is rejected, it must be sustained as constitutional. The principal questions in each case will therefore be, whether the act is in truth broader than the title; and if so, then whether the other objects in the act are so in-

timately connected with the one indicated by the title that the portion of the act relating to them cannot be rejected, and leave a complete and sensible enactment which is capable of being executed."

So, also, an act which contains two or more subjects, only one of which is expressed in its title, is void only as to the subject not included in the title. 79 Am. St. Rep. 456. It is only where a bill contains two separate subjects, both of which are expressed in its title, that the entire act ▇ must fail. Tested by the foregoing rules, even though it should be held that sections 16 and 17 of the act are unconstitutional for the reasons urged, still such holding would not cause the whole act to fail. With such sections eliminated, the act would be complete and capable of being enforced. It is further urged that the subject-matter of the act is broader than its title in that under section 25 the commission has complete control of all money received from the sale of liquor; that the commission and the Governor may prevent any of the money from going into the general fund of the state; that the commission may appoint as many persons as it sees fit to assist in enforcing the act; that section 180 of the act changes the burden of proof and thus attempts to amend the Code of Criminal Procedure; that by sections 28 and 29 an attempt is made to immunize the commission and its members from all liability; that under section 9 of the act the commission is independent of the provisions of the law pertaining to the board of supplies and purchase. It is urged that none of these provisions are expressed in the title of the act. What has been said with respect to sections 16 and 17 applies to these sections. It is next urged that the title of the act is deceptive in that the title indicates that the commission, and it alone, shall have the right to sell alcohol and alcoholic beverages, while article 5 of the act (section 83 et seq.) provides for the sale of beer by licensees designated by the commission. This latter contention is untenable. The title provides not only "for the Sale of Alcohol and Alcoholic Beverages by Such Commission," but also provides for a system of state control of the

sale of alcohol and alcoholic beverages. The state may well control the sale of beer and other alcoholic beverages notwithstanding the same is sold by licensees of the commission. The title is broad enough to include sales made by licensees as well as sales made by the commission. It is also urged that those provisions of the act which are here directly brought in question with respect to nuisances and the abatement thereof are not sufficiently expressed in the title. Plaintiffs must fail in that contention. The provisions of the act declaring that places where alcoholic beverages are illegally sold are common nuisances and providing for the abatement thereof may well be said to be a means calculated to make effective the control of the purchase, sale, and use of alcoholic beverages. Nor do the provisions of the act with respect to such nuisances and the abatement thereof, when considered in connection with the other provisions of the act, offend against that provision of article 6, § 23, of the Constitution which provides that no bills shall be passed containing more than one subject. This court in a number of cases has had occasion to pass upon what may be included within a bill without offending against that provision of our State Constitution which requires that no bills shall be passed containing more than one subject which must be clearly expressed in its title. Among such cases are *Utah State Fair Ass'n* v. *Green*, 68 Utah 251, 249 P. 1016; *Ritchie* v. *Richards*, 14 Utah 345, 47 P. 670; *In re Monk*, 16 Utah 100, 50 P. 810; *Nystrom* v. *Clark*, 27 Utah 186, 75 P. 378; *Marioneaux* v. *Cutler*, 32 Utah 475, 91 P. 355; *Edler* v. *Edwards*, 34 Utah 13, 95 P. 367; *Salt Lake City* v. *Wilson*, 46 Utah 60, 148 P. 1104; *State* v. *Hammond*, 46 Utah 249, 148 P. 420; *Martineau* v. *Crabbe*, 46 Utah 327, 150 P. 301; *State* v. *McCornish*, 59 Utah 58, 201 P. 637; *State* v. *Olson*, 59 Utah 549, 205 P. 337; *Mutart* v. *Pratt*, 51 Utah 246, 170 P. 67; *Baker* v. *Department of Registration*, 78 Utah 424, 3 P. (2d) 1082.

The provisions of the act declaring places where alcoholic beverages are illegally sold to be common nuisances and

providing for the abatement thereof are sufficiently expressed in the title of the act under the doctrine announced in the foregoing cases. Plaintiffs attack numerous other provisions of the act upon grounds other than that the subject-matter thereof is not expressed in the title. In order to confine our discussion to such provisions of the act as plaintiffs are entitled to question in these proceedings, it will be well to have in mind certain well-established rules of law touching the proper extent and limitation of our present inquiry.

"It is a fundamental principle that a statute may be constitutional in one part and unconstitutional in another part, and that if the invalid part is severable from the rest the portion which is constitutional may stand while that which is unconstitutional is stricken out and rejected; but where it is not possible to separate that which is unconstitutional from the rest of the act, then the whole statute falls. If after eliminating the invalid portions, the remaining provisions are sufficient to be operative and accomplish their proper purpose, it does not necessarily follow that the whole act is void. * * * In view of the established custom of judicial tribunals of avoiding the determination of questions as to the constitutionality of statutes except when necessary in deciding litigated cases, the courts will decline as a rule to decide whether a particular provision of a statute is unconstitutional, where they are of the opinion that if such provision is in fact invalid it may be severed from the remaining provisions of a statute, the validity of which alone is necessarily before the court. * * *

"The question as to whether portions of a statute which are constitutional shall be upheld while other divisible portions are eliminated as unconstitutional is primarily one of intention. If the objectionable parts of a statute are severable from the rest in such a way that the legislature would be presumed to have enacted the valid portion without the invalid, the failure of the latter will not necessarily render the entire statute invalid, but the statute may be enforced as to those portions of it which are constitutional. If, however, the constitutional and the unconstitutional portions are so dependent upon each other as to warrant the belief that the legislature intended them to take effect in their entirety, it follows that if the whole cannot be carried into effect, it will be presumed that the legislature would not have passed the residue independently, and accordingly the entire statute is invalid. This is simply another way of stating the familiar rule that if the parts of a law are divisible, and some of them are constitutional and others not, the constitutional provisions cannot

be held valid if it appears that they would not have been adopted without the other parts." 6 R. C. L. 121-124.

It will be observed that the text just quoted is but another way of stating what is said by the learned author of Cooley's Constitutional Limitations heretofore quoted. The effect, if any, of striking down some provisions of a given statute because unconstitutional is the same without regard to the basis for holding such provisions unconstitutional.

The common-law rule with respect to the manner of ascertaining the intention of the lawmaking body is somewhat modified when an act contains a provision such as section 207 of the act under review. Such section provides:

"If any word, clause, sentence, paragraph, or section of this act shall be declared invalid by any court of competent jurisdiction, the remainder of the act shall not be affected."

Such a provision in an act "has the effect of reversing the common-law presumption, that the Legislature intends an act to be effective as an entirety, by putting in its place the opposite presumption of divisibility; and this presumption must be overcome by considerations that ■ make evident the inseparability of the provisions or the clear probability that the Legislature would not have been satisfied with the statute unless it had included the invalid part." *Utah Power & Light Co.* v. *Pfost*, 286 U. S. 165, 184, 52 S. Ct. 548, 553, 76 L. Ed. 1038.

In the case of *Williams* v. *Standard Oil Co.*, 278 U. S. 235, 241, 49 S. Ct. 115, 117, 73 L. Ed. 287, 60 A. L. R. 596, it is said:

"In *Hill* v. *Wallace*, 259 U. S. 44, 71, 42 S. Ct. 453, 459, 66 L. Ed. 822, it is said that such a legislative declaration serves to assure the courts that separate sections or provisions of a partly invalid act may be properly sustained 'without hesitation or doubt as to whether they would have been adopted, even if the Legislature had been advised of the invalidity of part.' But the general rule is that the unobjectionable part of a statute cannot be held separable unless it appears that, 'standing alone, legal effect can be given to it and that

the Legislature intended the provision to stand, in case others included in the act and held bad should fall.' The question is one of interpretation and of legislative intent, and the legislative declaration 'provides a rule of construction which may sometimes aid in determining that intent. But it is an aid merely; not an inexorable command.' *Dorchy* v. *Kansas*, 264 U. S. 286, 290, 44 S. Ct. 323, 325, 68 L. Ed. 686.

"In the absence of such a legislative declaration, the presumption is that the Legislature intends an act to be effective as an entirety. This is well stated in *Riccio* v. *Hoboken*, 69 N. J. Law, 649, 662, 55 A. 1109, 1113, 63 L. R. A. 485, where the New Jersey Court of Errors and Appeals, in an opinion delivered by Judge Pitney (afterward a justice of this court), after setting forth the rule as above, said:

" 'In seeking the legislative intent, the presumption is against any mutilation of a statute, and the courts will resort to elimination only where an unconstitutional provision is interjected into a statute otherwise valid, and is so independent and separable that its removal will leave the constitutional features and purposes of the act substantially unaffected by the process.' "

The rule is thus stated by the Supreme Court of Washington in the case of *State* v. *Clausen*, 65 Wash. 156, 117 P. 1101, 37 L. R. A. (N. S.) 466, quoting from the Pacific Reporter at page 1114:

"In section 27, the Legislature has made it clear that it did not intend the provisions relating to those who are entitled to partake of its benefits to be so far an integral part of the act that it could not be eliminated in part without destroying the act in its entirety. It is there expressly provided that the adjudication of invalidity of any part of the act shall not affect the validity of the act as a whole or any other part thereof. This means that the Legislature intended the act to be enforced as far as it may be, even though it might not be valid in its entirety. It was competent for the Legislature so to provide. Anything it could have eliminated itself and left an operative act can be eliminated by the courts without destroying the entire act, if it is the will of the Legislature that the remaining parts of the act shall stand after such elimination."

It is urged generally that both our Federal and State Constitutions prohibit the state from engaging in the liquor business on its own account. Such contention cannot prevail with respect to the Federal Constitution in the light of the conclusions reached by the Supreme Court of the United States in the case of *Green* v. *Frazier*,

253 U. S. 233, 40 S. Ct. 499, 64 L. Ed. 878. While the provision of article 4, § 4, of our Federal Constitution, providing that "the United States shall guarantee to every State in this Union a Republican Form of Government," was not discussed in that case, still, such provision was necessarily involved. It appears from the facts recited in that case that the state of North Dakota engaged in various kinds of businesses far beyond what is contemplated by the Liquor Control Act, yet that court held that the law permitting the conducting of such businesses did not offend against the Constitution of the United States.

Nor do we find anything in the act under review which conflicts with section 2 of the Twenty-First Amendment to the Constitution of the United States. Section 2 of that Amendment provides that:

"The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

Such provision is calculated to enlarge rather than to restrict the powers of the various states of the Union to control intoxicating liquors. One of the purposes of the Twenty-First Amendment to the Federal Constitution would seem to be to nullify the doctrine announced in the case of *Vance* v. *W. A. Vandercook Co.*, 170 U. S. 438, 18 S. Ct. 674, 676, 42 L. Ed. 1100, and the impinging cases cited by plaintiffs. It was held in the case of *Vance* v. *W. A. Vandercook Co.*, just cited:

"That the right to send liquors from one state into another, and the act of sending the same, is interstate commerce, the regulation whereof has been committed by the constitution of the United States to congress, and hence that a state law which denies such a right, or substantially interferes or hampers the same, is in conflict with the constitution of the United States."

The quotation is from the syllabus. Since the adoption of the Twenty-First Amendment it would seem reasonably

clear that a state may prohibit its inhabitants from importing intoxicating liquor for their own use without offending against the Constitution of the United States. In any event it was competent for the Legislature to prohibit the sale of intoxicating liquors within the state and to provide that places where such liquors are illegally sold are common nuisances. Moreover, so far as is made to appear, no question as to the right of plaintiffs to import intoxicating liquors into the state is involved in any of the proceedings under review.

Nor do we find anything in our State Constitution which prohibits the state Legislature from enacting a law putting the state into the liquor business. We do have a constitutional provision, article 12, § 20, which provides that:

"Any combination by individuals, corporations, or associations, having for its object or effect the controlling of the price of any products of the soil, or of any article of manufacture or commerce, or the cost of exchange or transportation, is prohibited, and hereby declared unlawful, and against public policy."

It is difficult to perceive that the framers of the Constitution intended that such provision should apply to the state itself. Its purpose was doubtless to protect the citizens of the state generally from those who might otherwise seek an unfair advantage by stifling competition and thereby increase prices. Whatever unconstitutional limitations there may be upon the authority of the Legislature to enact laws putting the state into business generally, we are unable to perceive any constitutional objections to the state engaging in the sale and distribution of intoxicating liquors. The authority of the Legislature under its police power to regulate and prohibit traffic in intoxicating liquors is too well established to admit of debate. Notwithstanding the repeal of the prohibition clause of our State Constitution, the Legislature may entirely prohibit the manufacture, sale, and use of intoxicating liquor. No constitutional rights of the plaintiffs are infringed be-

cause the Legislature has seen fit to provide that the state shall occupy the entire field, or nearly so, of the sale and distribution of intoxicating liquors. Such in effect is the holding of this court in the case of *Utah Manufacturers' Ass'n* v. *Stewart*, 82 Utah 198, 23 P. (2d) 229. Numerous authorities sustaining such legislative powers will be found collected in that case.

A large number of the provisions of the Liquor Control Act are questioned upon the ground that by them the Legislature has attempted to vest judicial powers in the commission, and, likewise, has attempted to delegate lawmaking functions to the Governor and the commission. The following sections are attacked upon those and other grounds: sections 1, 6, 7, 8, 27, 28, 29, 30, 31, 36, 44, 46, 47, 49, 54, 60, 80, 83, 87, 88, 89, 113, and 144.

We shall not, in this opinion, undertake the task of reviewing separately each of the various questioned sections, but shall confine our discussion to such of the sections as plaintiffs have discussed in their briefs. Section 5 of the act directs that the Governor "shall fix the salary of each commissioner." It is urged that such provision offends against article 7, § 20, of our State Constitution. That section provides that:

"The Governor, Secretary of State, Auditor, Treasurer, Attorney-General, Superintendent of Public Instruction and such other State and district officers as may be provided for by law, shall receive for their services quarterly, a compensation as fixed by law."

Plaintiffs argue that the members of the liquor control commission are state officers; that as such their salaries must be "fixed by law," and may not be fixed by the Governor; that there being no lawful way for the members of the commission to be paid any compensation for their services, the whole act must fail because the commissioners will not serve the state unless paid. Assuming, without deciding, that the Legislature and not the Governor must fix the salaries, if any, that may be paid to

the commissioners, it by no means follows that the whole act must fail on that account. The provision authorizing the Governor to fix the salaries of the commissioners is separable from the remainder of the act. The act is capable of enforcement without regard to whether the commissioners are, or are not, entitled to be paid a salary. It may, or may not, be that the commissioners are willing to serve without pay, or with the hope that a future Legislature will provide for their compensation. The case of *State* v. *Board of County Commissioners,* 140 Kan. 744, 39 P. (2d) 286, cited and relied upon by plaintiffs is readily distinguished from the case in hand. There an attempt was made to fix liability upon the county commissioners of Wyandotte county, Kan., to pay compensation to a special prosecutor. The question of the right to compensation was directly involved. It affirmatively appeared that the special prosecutor theretofore appointed would not further serve without being assured compensation. So far as appears, the act there involved did not contain a provision such as section 207 of the Liquor Control Act. Plaintiffs in this proceeding may not be heard to complain of the infirmities, if any, in that provision of the act which directs the Governor to fix the salaries of the commissioners. For similar reasons, the plaintiffs may not in this proceeding question the constitutionality of those provisions of the act which permit the commission to deposit the funds which it receives from the sale of liquor in banks designated as state depositories; nor those provisions which permit the commission to pay its members and employees out of such funds; nor that provision which directs that $500,000 of the net profits derived from the sale of liquor during the biennium beginning July 1, 1935, and ending June 30, 1937, or so much thereof as may be available and as may be necessary to balance the general fund budget be applied to such purpose and that the remainder be expended at the Governor's discretion "in cooperation with the federal government or any of its agencies, or otherwise, for the betterment of social and

economic conditions in this state." Chapter 43, § 26. Should these and similar provisions of the act be declared unconstitutional and the funds derived from the sale of intoxicating liquor be held to be public funds that must be delivered to and disbursed by the state treasurer as are other funds belonging to the state, still the entire act would not for that reason fail in its general purposes.

Much is said in the briefs of plaintiffs concerning the broad powers granted to the commission by various provisions of the act. Attacks are especially directed against those provisions which vest in the commission authority to grant, refuse, or revoke, with or without cause, permits to purchase liquor, and, likewise, to grant, refuse, or revoke, with or without cause, licenses to sell beer containing less than 3.2 per cent. of alcohol by weight. Thus section 6, subsec. (f), thereof, empowers the commission to grant, refuse, suspend, or cancel permits for the purchase or use of liquor. Subsec. (m) provides that:

"Without in any way limiting or being limited by the foregoing specific powers, generally do all such things as are deemed necessary or advisable by the commission for carrying into effect the provisions of this act and the regulations."

Similar general provisions are contained in sections 7 and 8. Section 36 provides that:

"The commission is authorized to limit the amount of liquor which may be purchased from a state liquor store or package agency by any person at one time or during any period."

Section 49 provides that:

"Notwithstanding any other provisions of this act, the commission may refuse or direct any official or employee authorized to issue permits to refuse to issue a permit to any person and no official so directed shall issue any such permit."

Section 54 provides that:

"Notwithstanding anything contained in this act, the commission may for any cause which it deems sufficient with or without any

hearing cancel or suspend any permit granted for the purchase of liquor under this act."

## Section 29 provides that:

"Every action, order or decision of the commission as to any matter or thing in respect of which any discretion is conferred on the commission under this act shall be final and shall not be questioned, reviewed or restrained by injunction, prohibition or mandamus or other process or proceeding in any court or be removed by certiorari or otherwise to any court, except in the cases in which fraud or excess of jurisdiction is claimed."

Assuming without deciding that some or all of the provisions just quoted, and other similar provisions contained in the act, are unconstitutional, still it does not follow that the whole act must fail. Indeed, if we are to accept the arguments of counsel for plaintiffs, the act would be much better if these provisions of the act were eliminated therefrom. The act is not without definite provisions touching the qualifications of a permittee. Thus section 63 provides that:

"No permit shall be issued to any person to whom the sale of intoxicants is prohibited by law."

## Section 79 provides that:

"No person shall receive a permit or package agency certificate under this act who is under twenty-one years of age."

Section 55 authorizes the courts to suspend for a period of one year the permit of any person who is found to be drinking intoxicating liquors excessively. The act would not be rendered unenforceable if the provisions thereof granting to the commission unlimited powers to grant, deny, and terminate permits were emasculated therefrom. A holding that such provisions are unconstitutional would be of no avail to the plaintiffs in the injunction proceedings here sought to be stayed, and therefore we withhold expressing an opinion as to the constitutionality of such provisions

until such time as the question is presented by some one who is presently in danger of having them applied to his disadvantage. In this connection we have not overlooked an allegation in one of the petitions to the effect that the liquor control commission has, without notice or hearing, revoked the permit of one of the petitioners to purchase liquor. So far as is made to appear, the action of the commission in revoking a permit to purchase liquor is in no sense a part of or connected with the injunction proceedings here brought in question. We are without authority under either of the writs heretofore issued to review the action of the commission in such respect. In this proceeding we are primarily concerned with those provisions of the act which deal with the sale of light beer and the right, if any, of the plaintiffs under their licenses issued under the act of 1933 to sell light beer. Touching the regulation and sale of light beer, the act contains, among others, the following provisions:

Section 78, that license fees authorized by the act shall be paid by the commission to the municipalities where the licensed premises are located.

Under section 80, heretofore referred to in this opinion, it will be observed the commission may, at its discretion, with or without a hearing, refuse to grant, and may likewise revoke any license, and that such action may not be questioned except for fraud.

Section 75 makes provision as to what shall be contained in an application for a license.

Section 89 provides that the commission may grant licenses to sell light beer at retail in bottles for consumption off the premises where sold, and may also grant licenses to sell light beer on draught, but no such licenses shall be granted to sell any beer in any dance hall, theater, or in the proximity of any church or school. The commission shall have authority to determine in each case what shall constitute proximity.

Section 86 provides that:

"No license shall be granted to any retailer to sell beer on draft * * * unless he shall be of good moral character, over the age of twenty-one years, and a citizen of the United States, nor to anyone who has been convicted of a felony, or of any violation of any law or ordinance relating to intoxicating liquors, or of drunken driving or of keeping a gambling or disorderly house, or who has pleaded guilty to, or has forfeited his bail on a charge of having committed a felony or of having violated any such law or ordinance, nor to any partnership, any member of which lacks any of the qualifications hereinbefore in this paragraph set out, nor to any corporation, any director, or officer of which lacks any of such qualifications. Licensees authorized to sell light beer in bottles shall be of a good moral character and shall possess such other qualifications as may be required by the commission."

Section 91 provides that:

"The number of licenses for sale of light beer on draft which may be outstanding at one time within any city, town or county shall not exceed one for the first 500 of population or portion thereof, one for the next 500 or major portion thereof, one for the next 1,000 or major portion thereof, one for the next 2,000 or major portion thereof, and one for each additional 4,000 or major portion thereof. Population for the purposes of this section shall be determined by reference to the federal census next preceding the date of such determination. In determining the number of outstanding licenses which may be allowed in the territory of any county exclusive of the territory embraced in the cities and towns therein, the population in such county exclusive of that of the cities and towns located in said county shall be taken."

It will be observed from the sections just quoted that the act contains definite provisions as to the manner of issuing licenses to sell light beer, the persons to whom the same may be issued, and the kind of misconduct of the licensee that will work a forfeiture of his license. If the sections which grant to the commission unlimited authority to grant, revoke, or refuse to grant or revoke a license to sell beer were eliminated from the act because unconstitutional, still the act may not, for that reason, be said to be incomplete and unenforceable. The fact that the Legislature may have at-

tempted to confer on the commission authority inhibited by the Constitution does not justify the courts in denying to the commission the right to exercise such authority as is granted to it within constitutional limitations. It will be noted that by the provisions of the act the commission is granted sole authority to issue licenses to sell light beer within cities, towns, and counties while the amount to be paid for licenses must be fixed by the municipality where the licensee is to conduct the business authorized by the license. Plaintiffs earnestly contend that such provisions offend against article 6, § 29, of our State Constitution which provides that:

"The Legislature shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, to levy taxes, to select a capitol site, or to perform any municipal functions."

There is nothing in that constitutional provision which inhibits the state from retaining control of the sale of light beer within a municipality. If the sale of light beer is permitted, there is nothing in the Constitution which precludes the Legislature from making proper provision for the regulation thereof, nor from requiring the taking out and paying for a license by those who are permitted to engage in the business of selling the same. The state is deprived of such power only when it has been surrendered to the municipality. The state's authority to regulate and control the sale of light beer becomes a municipal function when, and only when, the state divests itself and invests a municipality with such powers. A municipality acquired such authority, if at all, by an act of the Legislature. No such power is conferred upon counties, cities, or towns within the state by the Constitution. The state having, as it does, plenary power to either grant to or withhold from municipalities the right to control the manufacture, sale, and use of intoxicating liquors, it follows that the state may confer limited authority upon municipalities and retain

to itself all control not so granted. The granting of authority to municipalities to fix, within their respective boundaries, the amount to be charged for a license to sell light beer and directing the commission to pay the money collected for such licenses to the municipalities is a matter of legislative policy, with the wisdom of which the courts are not concerned. Having determined that there is legislative power to enact a law, it is our duty to give it effect. Nor is any constitutional provision infringed by that portion of the act which, upon the basis of population fixes the number of licenses that may be granted in municipalities. The doctrine upon which such legislative authority is founded is thus expressed by the learned author of 1 Cooley's Constitutional Limitations (8th Ed.) p. 580:

"Where the grant is of a franchise which would not otherwise exist, no question can be made of the right of the State to make it exclusive, unless the constitution of the State forbids it; because, in contemplation of law, no one is wronged when he is only excluded from that to which he never had any right. An exclusive right to build and maintain a toll bridge or to set up a ferry may therefore be granted; and the State may doubtless limit, by the requirement of a license, the number of persons who shall be allowed to engage in employments the entering upon which is not a matter of common right, and which, because of their liability to abuse, may require special and extraordinary police supervision. The business of selling intoxicating drinks and of setting up a lottery are illustrations of such employments."

In 6 R. C. L. p. 408, the same doctrine is thus stated:

"For the purposes of government exclusive rights and privileges are occasionally granted to particular individuals. When the public purpose of such grants is apparent the courts as a rule sustain them as in no wise denying to any the equal protection of the laws or violating prohibitions as to the granting to any one of special and exclusive rights or immunities. This principle has been applied to sustain the validity of exclusive privileges to remove garbage from cities, to dispense intoxicating liquors, to supply school books, to operate ferries and to exercise the power of eminent domain."

This court has in effect approved and followed that doctrine in the following cases: *Perry* v. *City Council of Salt*

*Lake City,* 7 Utah 143, 25 P. 739, 998, 11 L. R. A. 446; *Smyth* v. *Butters,* 38 Utah 151, 112 P. 809, 32 L. R. A. (N. S.) 393; *Salt Lake City* v. *Bernhagen,* 56 Utah 159, 189 P. 583; *Utah Manufacturers' Ass'n* v. *Stewart,* 82 Utah 198, 23 P. (2d) 229.

Plaintiffs urge that light beer is not an intoxicating liquor, and therefore does not fall within the doctrine of the texts and cases just quoted and cited. By the Liquor Control Act alcoholic beverages are of two kinds, light beer and liquor. Beer is any beverage containing not less than one-half of 1 per centum of alcohol by weight and obtained by the alcoholic fermentation of an infusion or decoction of any malted grain or similar products. "Heavy beer" means beer containing more than 3.2 per centum of alcohol by weight. "Light beer" means beer containing not more than 3.2 per centum of alcohol by weight. Beer may or may not contain hops or other vegetable products. "Beer" includes ail, stout, and porter. "Liquor" means and includes alcohol, or any alcoholic, spirituous, vinous, fermented, malt, or other liquid or combination of liquids, a part of which is spirituous, vinous, or fermented, and all other drinks or drinkable liquids containing more than one-half of 1 per centum of alcohol by weight; and all mixtures, compounds, or preparations, whether liquid or not, which contain more than one-half of 1 per centum of alcohol by weight, and which are capable of human consumption; except that the term "liquor" shall not include "light beer."

Because of the foregoing and other provisions of the Liquor Control Act, plaintiffs contend that light beer is not an intoxicating liquor and was not so regarded by the Legislature at the time the act was passed. Nowhere in the act is it declared that light beer is nonintoxicating. The authority of the state to control and regulate the sale and use of light beer as defined in the act does not depend upon its being characterized by the act as intoxicating. The authority of the state under its police power to regulate the manufacture and use of light beer is to be

determined by the nature of such beer rather than by the general characterization given to it by the lawmaking body. The police power of the state to regulate the manufacture, sale, and use of intoxicating liquors is not limited to liquors which are in fact intoxicating, but extends to kindred non-intoxicating liquors. 33 C. J. 491; *Jacob Ruppert* v. *Caffey*, 251 U. S. 264, 40 S. Ct. 141, 64 L. Ed. 260; that light beer as defined in the act under review, even if nonintoxicating in fact, is a proper subject for the exercise of the police power of the state, cannot be seriously doubted.

It is next contended on behalf of plaintiffs that their licenses, issued under the law of 1933, are valid notwithstanding the enactment of the Liquor Control Act of 1935. The text-writers and adjudicated cases generally do not support but are against that contention.

"A license to sell liquor is revoked or annulled by the repeal of the law authorizing the grant of such licenses, or by any change in the legislation of the state or district inconsistent with the further exercise of the right conferred by the license, such as the adoption of a prohibitory statute or a local option law." 33 C. J. 565.

To the same effect is the text in 33 C. J. 622 and 37 C. J. 246. In 17 R. C. L. p. 476, it is said:

"Following the general principle that a license is not a contract, it is clear that it does not in itself create any vested right, or permanent right, and that free latitude is reserved by the legislature to impose new or additional burdens on the licensee, or to alter the license, or to revoke or annul it. And this is the general rule notwithstanding the expenditure of money by the licensee in reliance thereon, and regardless of whether the term for which the license was given has expired."

Cases which support the foregoing texts will be found collected in footnotes thereto. Even though licenses should be held to be entitled to the same standing in law as contracts, which they are not, still it was competent for the Legislature under its police power to nullify the licenses theretofore issued. We quote from 1 Cooley's Constitutional Limitations (8th Ed.) at page 436:

"Equally incumbent upon the State legislature and these municipal bodies is the restriction that they shall adopt no irrepealable legislation. No legislative body can so part with its powers by any proceeding as not to be able to continue the exercise of them. It can and should exercise them again and again, as often as the public interests require. Such a body has no power, even by Contract, to control and embarrass its legislative powers and duties."

Quoting further from the same volume at page 579 it is said:

"It would seem, therefore, to be the prevailing opinion, and one based upon sound reason, that the State cannot barter away, or in any manner abridge or weaken, any of those essential powers which are inherent in all governments, and the existence of which in full vigor is important to the well-being of organized society; and that any contracts to that end are void upon general principles, and cannot be saved from invalidity by the provision of the national Constitution. * * *"

This court in a number of cases has held that a contract although valid when made must give way to the proper exercise of the police powers of the lawmaking body. Among the cases so holding are: *City of St. George* v. *Public Utilities Commission*, 62 Utah 453, 220 P. 720, and *Retan* v. *Salt Lake City*, 63 Utah 459, 226 P. 1095.

The Liquor Control Act repealed the act under which plaintiffs' licenses were issued. Section 83 of the act provides:

"Beer may be * * * sold * * * in the manner and under the conditions prescribed in this act, or in the regulations, and not otherwise."

Section 85 provides that:

"No person shall * * * sell * * * or cause to be * * * sold * * * any beer * * * unless he shall hold a license so to do issued by the commission."

The meaning of the language just quoted is clear. It is not open to construction. By giving it effect, as we must

do, there is no escape from the conclusion that the licenses relied upon by plaintiffs do not authorize them to sell beer. In contemplation of law, they are in the same position as they would be if they held no licenses.

The proceedings which are here brought in question were commenced in the court below pursuant to provisions of sections 195 and 196. Section 195 declares that places where alcoholic beverages are unlawfully manufactured, sold, kept, bartered, stored, given away, or used, or where persons resort for the unlawful drinking of alcoholic beverages, and all alcoholic beverages, packages, equipment, or other property kept or used in maintaining the same are common nuisances.

Section 196 contains, among others, the following provisions:

"Whenever a nuisance as defined in this act is kept, maintained or exists, or if it is made to appear by affidavits or otherwise, to the satisfaction of the court, that such nuisance exists, a temporary writ of injunction shall forthwith issue, restraining the defendant from conducting or permitting the continuance of such nuisance until the conclusion of the trial. If a temporary injunction is prayed for, the court may issue an order restraining the defendant and all other persons from removing or in any way interfering with the alcoholic beverages, packages, fixtures, or other things used in connection with the violation of this act constituting such nuisance. No bond shall be required in instituting such proceedings. It shall not be necessary for the court to find the property involved was being unlawfully used as aforesaid at the time of the hearing, but on finding that the material allegations of the petition or complaint are true, the court shall order that no alcoholic beverages shall be manufactured, sold, kept, bartered, stored or given away in such room, house, building, boat, vehicle, structure, or place, or any part thereof."

Plaintiffs earnestly urge that the foregoing sections of the Liquor Control Act are unconstitutional in that they contravene article 1, §§ 7, 10, 11, 12, and article 8, § 18, of the Constitution of Utah. The constitutional provisions thus relied upon provide:

214

Article 1, § 7,

"No person shall be deprived of life, liberty or property, without due process of law."

Article 1, § 10, guarantees persons accused of crime the right to trial by jury, and fixes the number of persons that shall constitute a jury in civil and criminal cases.

Article 1, § 11, declares that the courts shall be open to every person for injury done to him in his person, property, or reputation; that he shall have remedy by due course of law; and that he may appear and present his cause in person or by counsel before tribunals in this state.

Article 1, § 12, grants to persons accused of crime the right to defend in person or by counsel, demand the nature and cause of accusation against him, to have compulsory process, to testify in his own behalf, and be confronted by witnesses against him, etc.

Article 8, § 18, provides that

"the style of all process shall be, 'The State of Utah,' and all prosecutions shall be conducted in the name and by the authority of the same."

The law is well established that it is competent for the lawmaking body to provide that places used for the illegal sale, keeping, or manufacture of intoxicating liquor shall be deemed common nuisances, and, as such, authorize the abatement thereof by injunction. 33 C. J. 519; 15 R. C. L. pp. 406-409; 2 Cooley's Constitutional Limitations (8th Ed.) pp. 1255-1257. It is equally well settled that the granting or refusing to grant injunctive relief is a matter of equitable jurisdiction. In an injunction proceeding, in the absence of a statute to the contrary, there is no right to a trial by jury. *State* v. *Saunders*, 66 N. H. 39, 25 A. 588, 18 L. R. A. 646; *Frost* v. *People*, 193 Ill. 635, 61 N. E. 1054, 86 Am. St. Rep. 352; *Kirkland* v. *State*, 72 Ark. 171, 78 S. W. 770, 65 L. R. A. 76, 105 Am. St. Rep. 25, 2 Ann.

Cas. 242; *State* v. *Certain Intoxicating Liquor*, 53 Utah 171, 177 P. 235.

It has been said by eminent authority that in doubtful cases the question of whether or not a nuisance exists must be tried by a jury. 2 Story Equity Jurisprudence (14th Ed.) p. 597.

It may here be observed that while section 196 of the act grants to courts authority to issue temporary writs of injunction restraining the "defendant from conducting or permitting the continuance of such nuisance until the conclusion of the trial," there is nothing in the act ██ which denies to the defendant a jury trial. Plaintiffs' position, as we understand it, is that the Legislature was without authority to empower the courts to issue such a temporary writ of injunction as is provided for in the act without first giving to the defendants notice and an opportunity to be heard; that to grant a temporary writ of injunction without notice and an opportunity to be heard is the taking of property without due process of law. If the granting of a temporary writ of injunction such as is authorized by section 196 of the act constitutes the taking of property within the meaning of the Constitution, the plaintiffs are entitled to prevail. It will be observed that the temporary writ authorized by the act is limited to restraining the defendant from conducting or permitting the continuance of a nuisance and from removing or in any way interfering with the alcoholic beverages, packages, fixtures, or other things used in the maintenance of such a nuisance until the conclusion of the trial. That part of section 196 which we have heretofore quoted in this opinion apparently has a twofold purpose, namely, to abate the claimed nuisance forthwith and to vest the court with jurisdiction over the property which it is claimed is being used to maintain the nuisance until the trial. It may not be said that any one has a right, constitutional or otherwise, to maintain a nuisance. It is not every interference with the use of property that constitutes a taking within the meaning of the Constitution.

6 R. C. L. 472, 473. We have statutory provisions which permit the taking and retention until trial of property from a person arrested upon the charge of a public offense. R. S. Utah 1933, 105-13-14, 105-54-20, 105-54-13, and 105-55-5. When anything is taken from one arrested which may be used as evidence of the commission of an offense, the same must be retained subject to the order of the court in which the defendant is tried. It is not open to serious doubt that under its police power the state may temporarily deprive an owner of his property as provided in the statutes just referred to without offending against that constitutional provision which prohibits the taking of property without due process of law. Upon principle the provisions of section 196 of the Liquor Control Act with respect to restraining a defendant and all other persons from removing or interfering with property used in the maintenance of a nuisance cannot be distinguished from the provision of the statute which authorizes the taking and retention of property for evidentiary purposes from one arrested for the commission of a crime.

It is also argued on behalf of the plaintiffs that the court below exceeded its jurisdiction in that the temporary injunction went beyond the authority conferred by the act. There is merit to that contention. What we conceive to be the proper construction of section 196 authorizes the court to issue a temporary injunction restraining the defendants from conducting or permitting the continuance of a nuisance and from removing or in any way interfering with alcoholic beverages, packages, fixtures, and other property used in maintaining the alleged nuisance until the trial. That portion of section 196 which provides that "the court shall order that no alcoholic beverages shall be manufactured, sold, kept, bartered, stored or given away in such room, house, building, boat, vehicle, structure, or place, or any part thereof," refers to the final order of abatement that shall be made after trial in the event, and only in the event, that the court finds that a nuisance is

being or has been maintained at the place designated in the petition or complaint. Any other construction of the act would lead to an absurdity. It will be noted that the first part of the section refers specifically to a temporary injunction restraining the defendant from interfering with the alcoholic beverages, etc., which are being used in maintaining a nuisance. Under such provision, if alcoholic beverages are in the place proceeded against, the defendant may not remove the same, while under the latter portion of the section he may not keep any alcoholic beverages at such place. Moreover, it will be noted that the order directing that no alcoholic beverages shall be manufactured, sold, kept, bartered, stored, or given away in the place proceeded against when, and only when, the court shall have found "that the material allegations of the petition or complaint are true." Due process of law requires that notice be given to the persons whose rights are to be affected. It "hears before it condemns, proceeds upon inquiry, and renders judgment only after trial." It is difficult to believe that the Legislature intended to empower the court to find "that the material allegations of the petition or complaint are true" without giving the defendant an opportunity to be heard. It is elementary that a court may not make findings binding upon a defendant without a hearing, or an opportunity to be heard. An act which authorized a court to make findings binding upon a defendant without giving him an opportunity to be heard must fail. A proper construction of section 196 authorizes the court upon a showing made by affidavit or otherwise to its satisfaction that there is probable cause to believe that a nuisance is being maintained as defined in the act, to issue a temporary injunction restraining the defendant from conducting or permitting the continuance of the nuisance and from interfering with the alcoholic beverages, packages, etc., until the conclusion of the trial. Only after trial may the court make its findings and, if such findings are to the effect that the defendant has maintained a nuisance, then "the court shall order that

no alcoholic beverages shall be manufactured, sold, kept, bartered, stored, or given away" in the place proceeded against. As so construed, the proceedings provided for in section 196 for the abatement of a nuisance do not constitute the taking of property without due process of law. Nor is the fact that no bond need be given for the institution of a proceeding for the abatement of the nuisance fatal to the validity of section 196. It is said in 14 R. C. L., pp. 472, 473, that:

"The power of the court to impose terms and conditions, including the giving of a bond, in connection with the issuance of an injunction, is one which is generally recognized. However, a bond is not required in all cases and whether one must be given is, aside from the statutory provision necessitating it, a matter for the court to determine in the exercise of its discretion, as is also the question of its terms and conditions and its general sufficiency. Therefore the court may allow an injunction without a bond to prevent the use of property in violation of a statute and such procedure is not objectionable as depriving the owner of his property without due process of law. And, since as a condition of granting an injunction to stay proceedings at law, the court may require the plaintiff to enter into an undertaking as to damages in the event of the injunction proving to have been wrongly granted, it would seem to follow that the court has the power to mitigate the terms imposed, or to relieve them altogether. Where an injunction is sought in a federal court, the federal laws and the accepted equity practice of those courts control, and a bond may or may not be required according as the court deems it advisable in conformity thereto, having regard to the principles of equity. If this power is conferred by statute, the courts will not endeavor, by a strained and unwarranted interpretation, to extend the application of the enactment beyond its plain meaning. This statute authorizing the court, where an injunction is sought, to refuse an injunction and require the defendant to give bond to pay the plaintiff all damages that may be recovered on account of the continuance of the condition complained of, does not apply to final hearings, but only prescribes a mode of procedure as to interlocutory or restraining orders; it confers no power on a court to perpetuate a nuisance upon the giving of bond to pay damages."

The case of *State* v. *Roby*, 142 Ind. 168, 169, 41 N. E. 145, 33 L. R. A. 213, 51 Am. St. Rep. 174, supports the text above

quoted. Our attention is especially called to the fact that the injunction issued by the court below restrains plaintiffs herein, their agents, employees, servants, attorneys, and all other persons from using alcoholic beverages upon the premises proceeded against. Plaintiffs argue that the court exceeded its jurisdiction in attempting to enjoin the lawful use of intoxicating liquor on plaintiffs' premises. In such respect, the injunction went beyond the authority vested in the courts by the act.

The further question is raised that the commission is without authority to prosecute a proceeding for the abatement of a nuisance. Defendant commission relies upon sections 30 and 206 of the act for its authority to prosecute such an action. We quote the sections in full:

Section 30: "The commission may with the written consent of the governor be sued and may institute or defend proceedings in any court of law or otherwise in the name of 'Liquor Control Commission of Utah' as fully and effectually to all intents and purposes as though such commission were incorporated under such name or title and no such proceedings shall be taken against or in the names of the members of the commission, and no such proceedings shall abate by reason of any change in the membership of the commission by death, resignation or otherwise, but such proceedings may be continued as though such changes had not been made."

Section 206: "The governor and the commission may each initiate and carry on prosecutions for violations of this act in any and all political subdivisions of this state; and all city, county, precinct and state executive, prosecuting and peace officers are hereby charged with the enforcement of the provisions thereof. In the event of failure of any local officer to take the necessary steps for the enforcement of this act, any and all executive, prosecuting and peace officers of any larger political unit within any part of which such officer so failing or refusing has jurisdiction are hereby clothed with authority to take the necessary steps for the enforcement thereof. Any citizen, association or society may employ any attorney or attorneys to assist the prosecuting attorney to perform his duties under this act, and such attorney shall be counsel in the proceedings."

The point is made that under the provisions of section 30 the commission may not sue without the written consent

of the Governor. That section is not open to that construction. The import of the language used in that section is that the commission may be sued with the written consent of the Governor, but that it may on its own account and in its own name institute a suit the same as if it were incorporated.

It will be observed that general language is used investing the commission with authority to sue. That the commission may not in its own name prosecute criminal proceedings is clear. The proceedings here questioned are civil, not criminal.

Nuisances are classified by the authorities as public, private, or mixed. Public nuisances are those which

"violate public rights, and produce a common injury; when they injure or annoy that portion of the public which necessarily comes in contact with them. They are private when the injury resulting from them violates only private rights, and produces damage to a few persons only; or even to one person only. Mixed nuisances are those which are both public and private, in their effects * * * public, because they violate public rights, and injure many persons, or all the community; and private, in that they also produce special injury to private rights." 20 R. C. L. pp. 383, 384.

Quoting further from 20 R. C. L. pp. 460, 461, it is said:

"It is an established rule that the public alone may complain of nuisances of a public character which are not productive of special injury to any particular individual * * * But an individual may bring an action on account of a public nuisance when and only when he can show that he has sustained therefrom damage of a special character, distinct and different from the injury suffered by the public generally."

It is plaintiffs' contention that the powers conferred upon the commission are, as indicated by the act, such and only such as are conferred upon private corporations. Assuming without deciding that plaintiffs are right in that contention, still the authority of the commission to maintain the suits for injunction here under review must

be sustained. By the act the exclusive right to sell intoxicating beverages, other than light beer, is in the state. The act has for one of its purposes the collection of revenue for the state. It is made the duty of the commission to conduct the liquor business for and on behalf of the state. The duty thus imposed on the commission includes the acquiring for the state of all revenues derived from the sale of hard liquors and for municipalities within the state, license fees paid for the privilege of selling light beer. The sale of liquor not passing through the hands of the commission by persons for their own profit is calculated to reduce the revenue that the state will derive from the sale of liquor. The law is well settled that a private corporation organized for profit may, by injunction, prevent the commission of any act without just cause or excuse which destroys its custom and profits. The right to protect one's financial interests is not confined to rights arising from contracts. That the Legislature intended to vest the commission with full power to control the liquor business in this state is clear. That it was competent for the Legislature to authorize the commission to prosecute all civil suits that may be necessary to make its control of intoxicating liquors effective is not open to serious doubt. We can conceive of no valid reason why the commission under its general powers to sue, and having as it does the sole right to sell hard liquors, may not maintain an action to abate the conducting of a place where hard liquors are being unlawfully sold. Viewing the commission as having only such powers as a private corporation, as plaintiffs would have us do, still the commission may have a special financial interest in the suppression of places where liquor is being unlawfully sold and having such special interest may maintain an action for the abatement thereof. The case of *Crockett, Secretary of State,* v. *Salt Lake County,* 72 Utah 337, 270 P. 142, 60 A. L. R. 867, lends support to such view.

Plaintiffs have suggested that other provisions of the act are unconstitutional, but such provisions do not directly

222

affect the proceedings under review. No useful purpose would be served by a further discussion of them.

From what has been said, it follows that the courts below had jurisdiction to enjoin plaintiffs herein from conducting or permitting a nuisance to continue on the premises described in the various complaints, and also restraining them and all other persons from removing or in any way interfering with the alcoholic beverages, packages, fixtures, or other things used in connection with maintaining the nuisances on such premises until the conclusion of the trial. That is the extent of authority conferred upon the courts by the act prior to the conclusion of the trial. The courts are without jurisdiction to extend the temporary injunctions beyond the authority so vested in them or to restrain the plaintiffs herein from using their premises for any lawful purpose prior to the conclusion of the trial.

The courts below are directed to amend the temporary injunctions to the extent indicated. The alternative writs of prohibition heretofore issued by this court are vacated and recalled and the various petitions for permanent writs of prohibition are denied. No costs will be allowed any of the parties in this proceeding.

FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., and McDONOUGH, District Judge, concur.

WOLFE, J., being disqualified, did not participate herein.